Francesca Morris
Harmony I. Loube
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007-3189
Tel: (212) 513-3200
Fax: (212) 385-9010
E-mail: francesca.morris@hklaw.com
        harmony.loube@hklaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KALAFRANA SHIPPING LTD.,

                    Plaintiff,

            -against-

SEA GULL SHIPPING CO. LTD.,

                    Defendant.

---

08 Civ. 5299 (SAS)

**Memorandum of Sea Gull Shipping Co. Ltd. in Support of its Motion to Vacate and Reduce Kalafrana Shipping Ltd's Maritime Attachment**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL BACKGROUND...............................................................................................1

ARGUMENT.......................................................................................................................3

    POINT I  THE MARITIME ATTACHMENT SHOULD BE VACATED AS TO
              CLAIMS BASED ON THE  MOA BECAUSE THERE IS NO
              ADMIRALTY JURISDICTION........................................................................3

          A.      Plaintiff has failed to Meet its Burden to Prove that its Rule B
                    Attachment Against Sea Gull was Issued for a Valid Admiralty
                    Claim............................................................................................3

          B.      The Contract for Sale of a Vessel is not a Maritime Contract under
                    Binding Precedent........................................................................5

          C.      The Cases Cited by Plaintiff do not Specifically Address the
                    Contract  for the Sale of a Vessel................................................9

    POINT II  PLAINTIFF'S ATTACHMENT OF SEA GULL'S FUNDS WAS
              EITHER WRONGFUL OR CONSTITUTES AN ABUSE OF
               PROCESS .....................................................................................12

          A.      Wrongful Attachment ..............................................................12
          B.      Abuse of Process......................................................................13
          C.      Attorney's Fees.........................................................................14

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES

### FEDERAL CASES

*The Ada*, 250 Fed. 194 ...................................................................................................................5

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,*
    460 F.3d 434 (2d Cir. 2006)...................................................................................................3, 4

*Armour & Co. v. Fort Morgan SS Co.,*
    270 U.S. 253 (1926)...................................................................................................................8

*Aston Agrio-Industrial AG v. Star Grain Ltd.,*
    No. 06 Civ. 2805, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006).......................3

*CTI-Container Leasing Corp. v. Oceanic Operations Corp.,*
    682 F.2d 377 (2d Cir. 1982)......................................................................................................5

*Carey Marine, Inc. v. M/V Papillon,*
    872 F.2d 751 (6th Cir. 1989) ....................................................................................................8

*Casco Marina Development v. M/V Forrestall, et al.,*
    384 F. Supp. 2d 154 (D.D.C 2005)...........................................................................................8

*Economu v. Bates,*
    222 F. Supp. 988 (S.D.N.Y. 1963) ...........................................................................................5

*Exxon Corp v. Central Gulf Lines, Inc.,*
    500 U.S. 603 (1991)...................................................................................................................9

*Flota Maritima Browning De Cuba, Sociada Anonima v. Republic of Cuba,*
    181 F. Supp. 801 (D.MD. 1960), *aff'd*, 363 F.2d 733 (4th Cir. 1966)................................10

*Folksamerica Reinsurance Company v. Clean Water of New York, Inc.,*
    413 F.3d 307 (2nd Cir. 2005)..................................................................................................10

*The Guayaquil,*
    29 F. Supp. 578 (E.D.N.Y. 1939) .............................................................................................5

*Herman Family Revocable Trust v. Teddy Bear,*
    254 F.3d 802 (9th Cir. 2001) ....................................................................................................8

*International Shipping Co., S.A. v. Hydra Offshore, Inc.,*
    675 F. Supp. 146 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 388 (2d Cir. 1989) ....................5, 7, 13

*J.A.R., Inc. v. M/V Lady Lucille*,
    963 F.2d 96 (5th Cir. 1992) ...........................................................................8

*Kossick v. United Fruit Co.*,
    365 U.S. 731 (1961)...................................................................................5, 9

*Magallanes Invest. Co. Inc. v. Circuit System Inc.*,
    994 F.2d 1214 (7th Cir. 1993) .....................................................................8

*Maritime Petroleo e Engenharia Ltda v. Ocean Rig 1 AS and Ocean Rig 2 AS*,
    78 F. Supp. 2d 162 (S.D.N.Y. 1999)...........................................................3

*Minturn v. Maynard*,
    58 U.S. 477 (1855).......................................................................................9

*Norfolk Southern Railway Co. v. James N. Kirby, Pty Ltd.*,
    543 U.S. 14 (2004).......................................................................................9

*Royal Swan Navigation Co. v. Global Container Lines*,
    868 F. Supp. 599 (S.D.N.Y. 1994) ..............................................................4

*Sea Transport Contractors v. Industries Chemiques Du Senegal*,
    411 F. Supp. 2d 386 (S.D.N.Y. 2006)..........................................................4

*Shipping Financial Serv. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998)........................................................................4

*Sirius Insurance Co. (UK) Ltd. v. Collins*,
    16 F.3d 34 (2d Cir. 1994)..........................................................................10

*Stephens Boat Co. v. Barge Orr 1,* 791 F. Supp. 145 (E.D.La. 1992) ...........................8

*Thames Towboat Co. v. The Francis McDonald,* 254 U.S. 242 (1920) ..........................8

*Twin City Barge & Towing Co. v. Aiple*,
    709 F.2d 507 (8th Cir. 1983) .......................................................................8

*United States v. Russotti*,
    780 F. Supp. 128 (S.D.N.Y. 1991) ..............................................................8

*Winter Storm Shipping Ltd. v. TPI*,
    310 F.3d 263 (2d Cir. 2002)........................................................................4

*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*,
    425 F. Supp. 2d 484 (S.D.N.Y. 2006 )........................................................7

*Ziegler v. Rieff*,
    637 F. Supp. 675 (S.D.N.Y. 1986) ..............................................................5

## STATE CASES

*Allied Maritime, Inc. v. The Rice Corporation,*
  No. 04 Civ. 7029, 2004 WL. 2284389 (Oct. 12, 2004) .......................................................4

*Board of Education of Farmingdale Union Free Sch. District v. Farmingdale Classroom*
  *Teachers Association Inc.*, 38 N.Y.2d 297, 380 N.Y.S.2d 635 (N.Y. 1975)....................13

*Piep v. Baron,*
  506 N.Y.S.2d 838 (N.Y. Civ. Crt. 1986) .........................................................................13

*Priester v. Senkowski,*
  No. 01 Civ. 3441, 2002 WL. 1448303 (S.D.N.Y. July 3, 2002) ........................................7

## FEDERAL STATUTES

9 U.S.C. §§ 202 *et seq*........................................................................................................2

Federal Arbitration Act, 9 U.S.C. §§ 1 et seq ......................................................................2

## MISCELLANEOUS

29 James WM. Moore, *Moore's Federal Practice*, § 705.04[5] (3d ed. 2008) ..............................4

## PRELIMINARY STATEMENT

Defendant Sea Gull Shipping Co. Ltd. ("Sea Gull" or "Defendant") submits this Memorandum in Support of its Motion under Rules E(4)(f), E(5) and E(6) of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules for Civil Procedure (the "Admiralty Rules"). As Plaintiff Kalafrana Shipping Ltd. ("Kalafrana" or "Plaintiff") has failed to allege a recognizable claim in admiralty concerning its claim under the Memorandum of Agreement ("MOA") for the sale of a vessel, as required under Rule B, Sea Gull's motion to vacate that part of the attachment that is not based on an admiralty claim and to reduce the attachment should be granted. The attachment of funds based on the contract for the sale of a vessel should be vacated for lack of subject matter jurisdiction, and the amount of the attachment should be reduced to only include damages for the alleged wrongful arrest of the vessel M/V ASSIL (the "Vessel").

## FACTUAL BACKGROUND

The parties have stipulated that Plaintiff's claim is based on the alleged breach of a contract for the sale of the Vessel. The dispute between the parties is based on the MOA. *See* (Complaint ¶¶ 5, 6.)[1] Kalafrana's claim is that Sea Gull did not perform under the MOA for sale of the vessel. (*Id.* ¶ 6.) All of Kalafrana's claims, with the exception of its claim for wrongful arrest, arise under the MOA. Kalafrana's claim for the alleged wrongful arrest of the Vessel totals $34,855.36 in damages plus interests and costs. (*Id.* ¶ 8.) However, Kalafrana sought and received an order of maritime attachment for the full amount of its claim against Sea Gull, including the claim under the MOA, in the amount of 639,635.38.

---

[1] The underlying Complaint dated June 10, 2008 is attached to the Affirmation of Francesca Morris ("Morris Affirm.") dated August 7, 2008, as Exhibit ("Exh.") A.

Disputes under the MOA are to be resolved in arbitration in London, under English law, as provided for in the MOA's arbitration clause. (MOA, clause 16. A true and correct copy of the MOA is attached as Exhibit F to the Morris Affirm.). Plaintiff alleges that an arbitration took place in London concerning the parties' disputes under the MOA, and that an arbitration award was rendered on December 12, 2007. (Complaint ¶ 7). Plaintiff is now seeking to have the arbitration award confirmed pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. and/or the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented at 9 U.S.C. §§ 202 *et seq.* (*Id.* ¶¶ 17, 21).

This action was filed on June 10, 2008 to affirm the award and to obtain a maritime attachment pursuant to Rule B of the Admiralty Rules. (*See* Complaint). Your Honor signed an Ex-Parte Order for Process of Maritime Attachment on the same day permitting the attachment of up to and including $639,635.38 of Sea Gull's assets.[2] To date, Kalafrana alleges it has attached $123,195.28 of Sea Gull's monies pursuant to Your Honor's Rule B Order.

This attachment, however, was subject to the ability of any person claiming an interest in the property to make an application to the court requesting "a prompt hearing at which the *Plaintiff* shall be required to show cause why the attachment and garnishment should not be vacated or other relief granted." (Ex-Parte Order ¶ 5 (emphasis added)). To that end, Sea Gull submits this motion pursuant to Supplemental Rules E(4)(f), E5(a), E(6) and E(7).

On July 23, 2008, Sea Gull's counsel sent a letter to Kalafrana's counsel, requesting that the attachment be reduced to the amount of Plaintiff's maritime claim for wrongful arrest. The letter included citations to Second Circuit precedent that a contract for sale of a vessel is not a maritime claim. (Morris Affirm. ¶ 6, Exh. B). By letter dated July 30, 2008, Plaintiff's counsel declined to reduce the attachment.

---

[2] The Ex-Parte Order is attached to the Morris Affirm. as Exh. B.

On August 1, 2008, the parties participated in a pre-trial and pre-motion conference before this Court. At the conference, the parties stipulated that Plaintiff's claims, with the exception of its claim for wrongful arrest of the vessel, are based solely on the contract for the sale of a vessel.

## ARGUMENT

## POINT I

### THE MARITIME ATTACHMENT SHOULD BE VACATED AS TO CLAIMS BASED ON THE MOA BECAUSE THERE IS NO ADMIRALTY JURISDICTION

**A.    Plaintiff has failed to Meet its Burden to Prove that its Rule B Attachment Against Sea Gull was Issued for a Valid Admiralty Claim**

A district court should issue the special remedy of a maritime attachment where a plaintiff, in addition to meeting the filing and service requirements of Supplemental Rules B and E to the Federal Rules of Civil Procedure, can show the following:

> (1) it has a valid prima facie admiralty claim against the Defendant; 2) the defendant cannot be found within the jurisdiction; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Rule B maritime attachment can be invoked only when a plaintiff files a verified complaint sufficient to make a prima facie showing that the plaintiff has a valid maritime claim against defendant in the amount sued for. *See Maritime Petroleo e Engenharia Ltda v. Ocean Rig 1 AS and Ocean Rig 2 AS*, 78 F. Supp. 2d 162, 166 (S.D.N.Y. 1999) (citing 2 Thomas J. Schoenbaum, Admiralty and Maritime Law, § 21-2 at 471 (2d ed. 1999)). "Absent the requisite admiralty or maritime jurisdiction, a *Rule B* maritime attachment is void." *See Aston Agrio-Indus. AG v. Star Grain Ltd.,* No. 06 Civ. 2805, 2006 U.S. Dist. LEXIS 91636, at *7 (S.D.N.Y. Dec. 20, 2006) (citing

*Sea Transport Contractors v. Industries Chemiques Du Senegal*, 411 F. Supp. 2d 386, 392 (S.D.N.Y. 2006)); *Maritime Petroleoe Engenharia Ltda*, 78 F. Supp. 2d at 172 (S.D.N.Y. 1999) ("Because of the absence of subject matter jurisdiction…the maritime attachment is vacated"); *see also Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002) (stating that to warrant the issuance of a maritime attachment, "the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333") (citation omitted).

To avoid abuse of this maritime remedy, Supplemental Rule E(4)(f) provides any person claiming an interest in the attached property with "a prompt hearing at which the plaintiff shall be required to show why…attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f). Importantly, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli Shipping Ltd*, 460 F.3d at 445 n. 5. Courts and legal commentators alike have recognized the weighty burden that lies with the party seeking to maintain the attachment. *See Allied Maritime, Inc. v. The Rice Corporation*, No. 04 Civ. 7029, 2004 WL 2284389, at *2 (Oct. 12, 2004), *reconsideration den'd*, 361 F. Supp. 2d 148 (S.D.N.Y. 2004); see also *Royal Swan Navigation Co. v. Global Container Lines,* 868 F. Supp. 599, 606 (S.D.N.Y. 1994); 29 James WM. Moore, *Moore's Federal Practice*, § 705.04[5] (3d ed. 2008).

Furthermore, the subject matter jurisdiction of the court must be affirmatively proved. The court may not infer subject matter jurisdiction. *See Shipping Financial Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (stating that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."). If a contract is a maritime contract, it is within the court's admiralty jurisdiction.

4

*Kossick v. United Fruit Co.,* 365 U.S. 731, 735-736 (1961); *CTI-Container Leasing Corp. v. Oceanic Operations Corp.,* 682 F.2d 377, 379 (2d Cir.1982). Whether or not a contract action falls within the court's admiralty jurisdiction depends on the subject matter of the contract. *Ziegler v. Rieff,* 637 F. Supp. 675, 677 (S.D.N.Y. 1986).

Here, Kalafrana has failed to make a *prima facie* showing that its claims based on the MOA are valid maritime claims. In fact, the parties do not dispute that Plaintiff's claims are based on the contract for the sale of a vessel As is more fully explained below, a vessel sales contract does not fall within the Court's admiralty jurisdiction. Accordingly, the court does not have jurisdiction to issue a Rule B attachment for Kalafrana's MOA-based claims.

**B.     The Contract for Sale of a Vessel is not a Maritime Contract under Binding Precedent**

It is well established by the Second Circuit that a contract for the sale of a vessel is not a maritime contract. *The Ada,* 250 Fed. 194, 196 (2d Cir. 1918); *see also*, *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.,* 675 F. Supp. 146, 150 (S.D.N.Y. 1987), *aff'd,* 875 F.2d 388 (2d Cir. 1989) ("It is elementary hornbook law that a contract for the sale of a vessel is not within the admiralty jurisdiction of the district courts.") (internal citation omitted); *Economu v. Bates,* 222 F. Supp. 988, 991 (S.D.N.Y. 1963) ("a contract for a sale of a vessel has been held to be nonmaritime")(citing *The Ada,* 250 Fed. at 196); *The Guayaquil,* 29 F. Supp. 578, 579 (E.D.N.Y. 1939) ("jurisdiction does not pertain to the admiralty court to enforce a contract for purchase of a vessel") (citing *Rea v. Steamer "Eclipse,"* 135 U.S. 599, 608 (1890)).

In *The Ada,* 250 Fed. at 195-96, the Second Circuit held that a combination sales contract and charter party under which the owner had the option to buy, and would become the owner of the vessel once the term was over, was a contract of sale. "All the provisions of the agreement

5

show that the main intention was a contract of sale." *Id.* at 196.  The court held that a sales contract was not within maritime jurisdiction. *Id.* at 197.

Not only is the precedent set in *The Ada* clear and unequivocal but, in addition, the facts in that case are similar to this.  In *The Ada,* the vessel was under charter for a period of six months, with an option to purchase the vessel at any time. *Id.* at 194-95.  At the time of the breach of contract, the charterer had exercised the option to purchase the vessel.  After the plaintiff exercised the sale option, the defendant withdrew the vessel from the charter and the plaintiff sued for breach of the charter and sales agreement. *Id.* at 195. The court stated that "the right to use and the right to buy the steamer in this case were inseparably connected" and that "[a]ll provisions of the agreement show that the main intention was a contract of sale." *Id.* at 196.  The Second Circuit held that the admiralty court had no jurisdiction over the dispute. *Id.* at 197.

Similarly, in this case Sea Gull chartered the vessel under a charter that included an option to buy. (Complaint Exh. A, ¶1)[3]  Based on that option, Sea Gull entered into the MOA, a separate contract to sell the Vessel to Kalafrana. (Exh. F)  The registered owner of the Vessel subsequently withdrew the Vessel from Sea Gull, which removed Sea Gull's option to buy the Vessel. (Complaint Exh. A, ¶5)  Kalafrana then terminated the MOA with Sea Gull and entered into a separate sales agreement with the registered owner to purchase the Vessel. (*Id.*)  Here, it is even more clear that the court lacks admiralty jurisdiction than in *The Ada*, because the charter and the MOA to purchase the Vessel are separate contracts, and the dispute at issue stems solely from the MOA.

---

[3] Sea Gull does not concede the authority of the arbitrator to make the arbitration award but does not dispute certain facts contained therein.

In *Int'l Shipping Co.* 675 F. Supp. at 147, the complaint sought injunctive relief based on the breach of a contract for the sale of a vessel and tortious interference with that contract. The Court held that "[i]t is elementary hornbook law that the contract for the sale of a vessel is not within the admiralty jurisdiction of the district courts." *Id.* at 150 (citations omitted). In discussing the issue of maritime jurisdiction, the Court noted that the papers submitted to the court by Plaintiff's counsel, made no argument for an extension, modification or reversal of existing law that no maritime jurisdiction exists over a contract for sale of a vessel. *Id.* at 151. In that case, Plaintiff had also predicated jurisdiction on diversity but the Court held that with foreign corporations on both sides of the case, diversity jurisdiction was defeated and the court had no subject matter jurisdiction over the case. *Id.* at 152. The Court stated that "[a] cursory review of a hornbook or digest would have revealed this jurisdictional defect to plaintiffs' counsel." *Id.* The court found that if Plaintiff's counsel performed a simply inquiry into the basis for jurisdiction, then the action for an attachment would not have been brought, and none of the fees incurred. *Id.* at 154. As a result of plaintiff's baseless jurisdictional claims, the court imposed Rule 11 sanctions against the Plaintiff in the amount of $10,000. *Id.* at 155.

Second Circuit precedent regarding contracts for the sale of a vessel is binding on this court, unless it has been expressly or implicitly overruled. *See World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 425 F.Supp.2d 484, 499 n. 7 (S.D.N.Y. 2006 ) ("The Court is bound to follow precedent even if it disagrees with it."); *Priester v. Senkowski,* No. 01 Civ. 3441, 2002 WL 1448303, at *7 (S.D.N.Y. July 3, 2002) ("Based on this principle of *stare decisis*, this Court is constrained to follow the holding of [the Second Circuit]." (alteration added)); *United States v. Russotti,* 780 F.Supp. 128, 131 (S.D.N.Y. 1991) ("[I]t is axiomatic that a district court cannot simply take a position contrary to that of its circuit court....").

In addition to the Second Circuit, federal courts in numerous circuits have held that agreements for the purchase and sale of vessels to be outside federal admiralty jurisdiction. *See, e.g., Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 804 (9th Cir. 2001); *Twin City Barge & Towing Co. v. Aiple*, 709 F.2d 507 (8th Cir. 1983); *Magallanes Invest. Co. Inc. v. Circuit Sys. Inc.*, 994 F.2d 1214, 1217 (7th Cir. 1993); *Carey Marine, Inc. v. M/V Papillon*, 872 F.2d 751, 755 (6th Cir. 1989); *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992); *Casco Marina Dev. v. M/V Forrestall, et al.*, 384 F. Supp. 2d 154, 160 (D.D.C 2005). Indeed, it has been hornbook law for almost a century that contracts for the sale of ships are outside the realm of maritime contracts. The Supreme Court, though it has not gone so far as to state that a contract for sale of a vessel is not maritime, has cited *The Ada* for its definition of a maritime contract:

> The original contract to purchase, assemble, and sell the cattle, to charter vessels and therein transport the cattle to Jacksonville, and the agreement of compromise, are not maritime contracts.

*Armour & Co. v. Fort Morgan SS Co.*, 270 U.S. 253, 259 (1926) (citing *The Ada*, 250 Fed. 194; *The Richard Winslow*, 71 Fed. 426 (1896)). The Supreme Court's approval of *The Ada* decision is explicit.

Numerous other contracts have been held not to be maritime contracts despite the fact that they might appear to involve maritime commerce. Thus, for instance, a contract to build a vessel, or supply materials for her construction, is not considered a maritime contract. *See Thames Towboat Co. v. The Francis McDonald*, 254 U.S. 242, 243 (1920); *Stephens Boat Co. v. Barge Orr 1*, 791 F. Supp. 145, 147 (E.D.La. 1992) ("In the United States it is settled by authority that a contract for building of a ship, or supplying materials for her construction, is not a maritime contract.") (internal quotations omitted); *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 849) (11th Cir. 1988) ("the law of admiralty is well-settled that a contract

for the construction of a vessel does not invoke the subject matter jurisdiction of the federal courts.").

### C.    The Cases Cited by Plaintiff do not Specifically Address the Contract for the Sale of a Vessel

In its July 30, 2008 letter to this Court, Plaintiffs' counsel relied on five case sources to support its argument. None of the cases cited by Plaintiff, however, address the issue of whether a contract for the sale of a vessel is a maritime contract. These cases, that generally discuss maritime contracts, cannot be interpreted to have overturned every maritime contract precedent. In the first case, *Kossick*, 365 U.S. at 735 (1961), the court held that an agreement by a shipowner to assume responsibility for medical services received by a chief steward on its vessel was a maritime contract. As discussed below, *Kossick* has not been interpreted to extend maritime jurisdiction beyond traditional precedent. *See Folksamerica,* 413 F.3d at 307. In the second case, *Exxon Corp v. Central Gulf Lines, Inc.*, 500 U.S. 604 (1991), the Court overruled its earlier decision in *Minturn v. Maynard*, 58 U.S. 477 (1855), and held that an agency contract, by which Exxon had procured fuel for the defendant vessel owner, was a maritime contract. *Exxon Corp.*, 500 U.S. at 603. The Court in *Exxon Corp*, however, emphasized that its ruling was a "narrow" one. *Id.* at 612.

In the third case cited by Plaintiff, *Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 18 (2004), the Court held that where a train wreck damaged cargo that had been shipped from Australia via ocean carriage and transshipped from Savannah by rail, the carriage was substantially maritime and therefore the Court had admiralty jurisdiction. The Court in *Kirby* resolved a split of the circuits on whether a mixed contract with land-based and maritime components was a maritime contract. *Id.* at 296. In this matter, however, there is no circuit split,

instead the federal courts have all held that the sale of vessel is not a maritime contract. (*See supra* at Point I(B)).

Plaintiff also cites *Sirius Insurance Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 36 (2nd Cir. 1994), in which the court held that a marine insurance policy covering a vessel against injury at sea, as well as during transportation and storage ashore, was a maritime contract. Finally, Plaintiff cites *Folksamerica Reinsurance Company v. Clean Water of New York, Inc.*, 413 F.3d 307, (2nd Cir. 2005), in which the Second Circuit addressed *Kirby*'s impact on defining maritime contracts. The Second Circuit noted that there are "few 'clean lines between maritime and non-maritime contracts.'" *Id.* at 311 (quoting *Kirby*, 543 U.S. at 22). As such, a "case-by-case approach in defining these boundaries" is necessary. *Id.* Importantly, the Court noted, however, the Supreme Court's "instruct[ion] that '[p]recedent and usage are helpful insofar as they exclude or include certain common types of contract'" *Id.* (citing *Kossick*, 365 U.S. at 735). In *Folksamerica*, the Court ultimately concluded that a contract for marine insurance was within the court's admiralty jurisdiction. Here, as suggested by the Second Circuit in *Folksamerica* this Court should look to binding "precedent and usage" which clearly exclude sales contracts from admiralty jurisdiction. Such "precedent and usage" should be followed by this Court.

In the pre-motion hearing held before this Court, Plaintiff referred to a ruling in the District Court for the District of Maryland, in which that court had expressed support for Plaintiff's argument. We assume the case Plaintiff is referring to is *Flota Maritima Browning De Cuba, Sociada Anonima v. Republic of Cuba*, 181 F. Supp. 801 (D.MD 1960), *aff'd*, 363 F.2d 733 (4th Cir. 1966). In *Flota Maritime*, the court stated *in dicta* that there has been criticism of the principle that a ship-sale contract does not fall within admiralty jurisdiction. *Id.* at 306. Nevertheless, the court stated that "it is not necessary for me to decide in this case whether a

simple contract for the sale of a vessel is maritime or not." *Id.* at 309. Instead, the court held

that the provisions of the lease-purchase contracts under which the claims at issue arose, were

separable from the sales provisions of those contracts, and that at least some of the alleged

claims at issue could be considered maritime claims. *Id.* at 308. A single comment in dicta by a

court in the District of Maryland should not overcome the decision of the Second Circuit in *The

Ada* and every other circuit court, and even district court that has adjudicated the issue.

Here, there is no dispute that Plaintiff's allegations stem from the alleged breach of a

contract for sale of a vessel. This fact is made clear in Kalafrana's complaint. (Complaint ¶¶ 5,

6) and Kalafrana's July 30, 2008 letter to this court. Furthermore, during the pre-motion

conference before this Court, counsel for both parties stipulated that Kalafrana's claims are based

on an alleged breach of a contract for the sale of a vessel.

As explained above, Kalafrana does not have a maritime claim for the alleged breach of

the MOA. The only part of Plaintiff's claim that is maritime in nature is its claim for the alleged

wrongful arrest of the vessel. Therefore, the attachment should be reduced to $34,855.36 (plus

interests and costs), the amount Kalafrana has claimed for the arrest. (Complaint ¶ 17).

Plaintiff argues that *Kirby*, and the other Supreme Court cases Plaintiff relies on, require

a re-examination of maritime contracts. However, even following *Kirby* courts have continued

to hold that contacts for sale of a vessel are not maritime contracts. In *Casco Marina Dev.*, 384

F. Supp. 2d at 154, the court held that federal admiralty law did not apply to the contract for the

sale of a yacht, and instead applied Maryland law. The Court cited to *Kirby* in its analysis:

> The interpretation of a maritime contract, where the dispute is not an inherently
> local one, is controlled by federal law. *Norfolk Southern Ry. Co. v. James N.
> Kirby, Pty Ltd.*, 543 U.S. 14, -- 125 S.Ct. 385, 392, 160 L.Ed.2d 283 (2004).
> Generally, however, the contract for the purchase of a vessel is not a maritime
> contract and therefore governed by the appropriate state law.

11

*Id.* at 160 (citations omitted).  Similarly, in *Lady Di Fishing Team, LLC v. Brunswick Corp.*, No. 07-402, 2007 U.S. Dist. LEXIS 80097, at *9 (M.D.Fla. 2007), the court cited *Kirby* in its analysis of whether the case fell within its admiralty jurisdiction. The court held that a contract for the sale of a vessel, that also included a warranty under which certain repairs were made, and disputes arose, did not fall under its admiralty jurisdiction. *Id.* at *19.  In explaining its holding, the Court stated that "[t]he crux of this case is the contract for the sale of the vessel, and not for repairs to an existing vessel....this is not an admiralty case." *Lady Di Fishing Team, LLC,* 2007 U.S. Dist. LEXIS 80097, at *19.

## POINT II

### PLAINTIFF'S ATTACHMENT OF SEA GULL'S FUNDS WAS EITHER WRONGFUL OR CONSTITUTES AN ABUSE OF PROCESS

**A.    Wrongful Attachment**

When seeking an attachment of Sea Gull's assets Plaintiff failed to bring to this Court's attention clearly-established precedent indicating that its claims do not fall within the court's admiralty jurisdiction.  Plaintiff should have indicated that is was attempting to overturn well-settled precedent.  In *Int'l Shipping* the court criticized plaintiff's counsel stating

> plaintiffs alleged nothing in the complaint that would remove this case from the scope of the general principle that cases involving contracts for the sale of a vessel are not admiralty cases.  Nor did plaintiffs address the issue in their papers filed on June 29, 1987, in support of their application for injunctive relief.

675 F.Supp. at 150.  Here, Plaintiff's claim is based on the contract for the sale of a vessel. (*See supra* Point I).  In the Complaint, Plaintiff invoked this Court's admiralty and maritime jurisdiction and supplemental jurisdiction.  (Complaint ¶1).  In seeking the Rule B attachment Plaintiff requested an attachment in the amount of $639,635.38.  That amount is far in excess of the concededly maritime claim for wrongful arrest which is a claim for $34,855.36.  When

requesting the attachment under Rule B, Plaintiff should have brought to this Court's attention clear precedent (*The Ada*, 250 Fed. 194, and other cases) that the contract for sale of a vessel is not maritime. *Int'l Shipping*, 675 F. Supp. at 130.

Some basic research into this legal issue would have revealed to counsel that the court did not have jurisdiction over Kalafrana's claims stemming from the MOA. *Int'l Shipping Co.*, 675 F. Supp. at 152. Plaintiff wrongfully attached Sea Gull's assets, to the extent the attachment exceeded the wrongful arrest claim. Regardless of whether Kalafrana's counsel knew of the existence of the established law concerning the sale of a vessel *before* the commencement of this proceeding, Kalafrana's refusal to release the attached funds *after being advised of the established law* unquestionably constitutes an abuse of process.

**B.    Abuse of Process**

By wrongfully attaching Sea Gull's funds, and failing to release the attached funds when notified by Defendant's counsel of the wrongful attachment, Plaintiff is guilty of abuse of process. Abuse of process has three elements:

(1)    regularly issued process either civil or criminal;
(2)    an intent to do harm without excuse or justification; and
(3)    use of the process in a perverted manner to obtain a collateral objective.

*Piep v. Baron*, 506 N.Y.S.2d 838, 840 (N.Y. Civ. Crt. 1986) (quoting *Board of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n. Inc.*, 38 N.Y.2d 297, 403, 380 N.Y.S.2d 635 (N.Y. 1975)).

Here the attachment order was "regularly issued [civil] process," satisfying the first abuse of process requirement. *Id.* As has been shown in Point I, Kalafrana's claims based on the MOA against Sea Gull are not valid maritime claims and therefore it has attached Sea Gull's assets "without excuse or justification." *Id.* This satisfies the second requirement. The third requirement

is satisfied because with no legitimate maritime claim based on the MOA, only a "collateral objective" could be the basis for Kalafrana's claim. *Id.* One can only guess at Kalafrana's objectives in pursuing Sea Gull but among such guesses would be that Kalafrana hopes that the wrongful attachment will put pressure on Sea Gull to settle Kalafrana's entire claim.

In any event, Kalafrana's refusal to release the attached funds when the well-settled law was made known to it is an abuse of the process of maritime attachment. The law regarding the sale of a vessel not being a maritime claim is well-established and it is clear that Kalafrana does not have a valid claim against Sea Gull based on the MOA. (*See supra* Point I). Kalafrana was made aware of the well-established law on this point by letter dated July 23, 2008. (Morris Affirm. ¶ 5, Exh. C).

Kalafrana's claims against Sea Gull clearly do not fall within this court's admiralty jurisdiction and have been brought only to support the attachment of funds. Kalafrana's attachment of Sea Gull's funds either was wrongful or its refusal to release the attachment is an abuse of process. In either case, the attachment related to the MOA claims should be vacated.

## C.    Attorney's Fees

When a plaintiff does not withdraw his claim where it is clear that it does not have a valid claim against the defendant, attorney's fees should be awarded. Recently, in *Stolthaven v. Rachel B*, 08-Civ-4327 (S.D.N.Y July 18, 2000) (order vacating attachment and granting attorney's fees), Judge Patterson granted attorney's fees in a case where a plaintiff did not withdraw the claim where it was clear there was no claim against the defendant. (*Stolthaven v. Rachel B*, 08-Civ-4327 (S.D.N.Y July 18, 2000), Opinion and Order. A true and correct copy of the Opinion and Order is attached to the Morris Affirm. as Exh. E).

According to the court, the attorneys' fees award was justified because the plaintiff should have released the attachment when it was advised by letter of facts that demonstrated

there was no maritime claim against the defendant. *Id.* at 12.    Here, Sea Gull informed Kalafrana's counsel that under well-established, binding precedent, this court did not have admiralty jurisdiction over its claims based on the MOA, and therefore its attachment should be reduced. (Morris Affirm. ¶¶ 5-6, Exh. C).    Nevertheless, Kalafrana refused to reduce its wrongful attachment.    As a result of that refusal, Sea Gull was forced to make this motion to the Court and to incur unnecessary attorney's fees and costs.    Accordingly, for the reasons set forth above Sea Gull requests that the court vacate the attachment, to the extent it is based on claims under the MOA, and award attorney's fees and costs to Sea Gull.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court vacate the attachment to the extent it is based on claims under the contract for sale of the vessel; reduce the attachment of Sea Gull's assets to the amount of Kalafrana's claim for wrongful arrest of a vessel, which is alleged in the complaint as totaling $34,855.36 plus interest and costs; order Kalafrana to pay Sea Gull's attorney's fees and costs associated with this Motion to Vacate and Reduce Attachment; and grant such other and further relief as this Court deems fair and just.

Dated:  New York, New York
       August 7, 2008

                              HOLLAND & KNIGHT LLP

                              By: _____
                                   Francesca Morris
                                   Harmony I. Loube
                                   195 Broadway
                                   New York, New York  10007-3189
                                   Tel:    (212) 513-3200
                                   Fax:    (212) 385-9010
                                   *Attorneys for Defendants*
                                   *Sea Gull Shipping Co., Ltd.*

To: Christopher H. Mansuy
Mahoney & Keane, LLP
76 Beaver Street, 10th Floor
New York, New York 10005
Tel: (212) 385-1422
*Attorneys for Plaintiffs*
*Kalafrana Shipping  Ltd.*

# 5520593_v2

16