3593

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KALAFRANA SHIPPING LTD,

                              Plaintiff,                              08 Civ.  5299 (SAS)

     - against -


SEA GULL SHIPPING  CO. LTD, a/k/a Sea Gull
Shipping Co. SARL

                              Defendant.
-----------------------------------------------------------X



**PLAINTIFF"S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO VACATE AND REDUCE
MARITIME ATTACHMENT ORDER
AND
<u>IN SUPPORT OF CROSS MOTION FOR LEAVE TO AMEND</u>**



**MAHONEY & KEANE, LLP**
*Attorneys for Plaintiff*
76 Beaver Street, 10th Floor
New York, New York  10005
(212) 385-1422



Christopher H. Mansuy
     *-of Counsel-*

# TABLE OF CONTENTS

Page

Table of Authorties....................................ii, iii, iv

INTRODUCTION................................................1

POINT I

THE DISPUTES ARE MARITIME IN NATURE............................2

POINT II

SUPPLEMENTAL JURISDICTION......................................8

POINT III

PLAINTIFF'S MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED........9

POINT IV

THE PRECEDENTS RELIED ON BY SEA GULL ARE OUTDATED.............11

CONCLUSION...................................................14

## TABLE OF AUTHORITIES

PAGE

The Ada, 250 Fed. 194 (2nd Cir. 1918).....................11, 12

Atlantic Mutual Insurance Co. v. Balfour MacLaine Int'l. Ltd.
In re Balfour MacLaine Int'l Ltd.), 85 F.3d 68
2d Cir. 1996).............................................2, 6

Armour & Co. v. Fort Morgan S.S. Co., 270
U.S. 253, 259 (1926).....................................13

Brave Bulk Transport Ltd. v. Spot-on Shipping Ltd.,
2007 A.M.C. 2958, (S.D.N.Y. 2007)........................7

Richard Bertram & Co. v. Yacht Wanda,
447 F.2d 966 (5th Cir. 1971..............................12

CTI Container Leasing Corp. v. Oceanic Operations Corp.
682 F.2d 377 at  2d  Cir. 1982...........................3

Detroit Trust Co. v. Steamer "Thomas Barlum,"
293 U.S. 21, 48 (1934)...................................5

Exxon Corp. v. Central Gulf Lines, Inc.,
500 U.S. 603 (1991), Id., 612............................8, 13

Folksamerica Reinsurance Co. v. Clean Water
of New York, Inc., 281 F. Supp. 2d 530 (E.D.N.Y. 2003)..........2

Folksamerica Reinsurance Co. v. Clean Water
of New York, Inc., 413 F3d 307, 2005
A.M.C. 1747 (2d Cir. 2005)...............................2,4,8,13

Flota Maritima v. M/V CIUDAD LA HABANA,
181 F. Supp. 301 (D. Md. 1960),
aff'd. 335 F.2d 619 (4th Cir. 1966)......................12

Foman v. Davis, 371 U.S .178 (1962)......................11

Grand Banks Fishing Co. v. Steirun,
114 F. Supp. 1 (D. Me. 1953).............................12

*Ingersoll Milling Machine Co. v. M/V BODENA*,
829 F.2d 293, (2d Cir. 1987), *cert. denied,*
484 U.S. 1042 1991).......................................3, 8, 13

*Kossick v. United Food Co.*, 365 U.S. 731, (1961).........4,6,8,13

*Kreatsoulas v. Freights of the Levant Pride*,
838 F. Supp. 147, (S.D.N.Y. 1993)...............................9

*Magana v. Hammer & Steel, Inc.*,
206 F. Supp. 2d 848, (S.D. Tex. 2002)..........................9

*Maritima Petroleo E Engenharia Ltda. v. Ocean Rig,*
1 AS, 78 F.Supp.2d 162 (S.D.N.Y. 1999)..........................6

Netherlands Amer. Steam Nav. Co. v. Gallagher, 282
Fed 171 (2d Cir. 1922).........................................13

*Norfolk Southern Rwy Co. v. James S. Kirby, Pty Ltd.,*
543 U.S. 14 (2004).........................................2,8,13

*Rea v. The Eclipse*, 135 U.S. 599, 608 (1890).................12

*Roco Carriers, Ltd. v. M/V NURNBURG EXPRESS,*
899 F.2d 1292 (2d Cir. 1990)....................................8

*Sirius Insurance Company (UK) Limited v.*
*Paul M. Collins*, 16 F.3d 34 (2d Cir. 1994)..............5,8,12,13

*Stamelman v. Fleishman-Hillard,*
2003 U.S. Dist. LEXIS 13328 (S.D.N.Y. 2003)....................11

*Tramp Oil & Marine v. M/V MERMAID,*
805 F.2d 42 (1st Cir. 1986)....................................10

*Tucker v. Alexandroff*, 183 U.S. 426, (1901)...................5

In *Zeigler v. Rieff*, 637 F. Supp.
675,(S.D.N.Y. 1986).............................................6

28 U.S.C. § 1367................................................8

Federal Rules of Civil Procedure Rule 15(a)...................10

Federal Rules of Civil Procedure, Rule B............1, 8, 11, 13

BENEDICT ON ADMIRALTY, (7th Ed. 1986).........................10

G. GILMORE & C. BLACK, THE LAW OF ADMIRALTY, (2d Ed. 1975).......10, 11

6 STANFORD LAW REVIEW 540 (1954)...............................12

## INTRODUCTION

Plaintiff Kalafrana Shipping Ltd respectfully submits this Memorandum of Law in opposition to defendant Sea Gull Shipping Co. Ltd.'s (hereinafter "Sea Gull") motion to vacate part of the Maritime Attachment Order signed by this Honorable Court on June 10, 2008 and reduce the amount restrained because certain claims based upon the breach of the contract of sale of the M/V ASSIL are not maritime. This memorandum is also submitted in support of Kalafrana's cross-motion for leave to amend the complaint and for an amended order of attachment.

Defendant Sea Gull does not challenge now that part of the Verified Complaint that seeks confirmation of the London arbitration award(Exhibit 1 to Verified Complaint) with regard to the award that defendant Sea Gull had wrongfully arrested the vessel in Italy in April, 2007 and the funds attached therefor. Seagull challenges the right asserted by plaintiff Kalafrana that the amounts awarded by the arbitrator for expenses incurred by Kalafrana in arranging for and paying for repairs to the vessel's engines, diesel generators, stern ramp and other equipment and port services do not qualify as maritime claims within the meaning of Rule B and, therefore, do not support the detention of defendant's funds. As this Honorable Court noted at the August 1 conference, this is a legal question.

Plaintiff does not dispute defendant's right to bring this challenge pursuant to Rule E. Plaintiff accepts the proposition that it must prove that the claims it asserts are admiralty and

maritime claims.  Plaintiff also does not dispute that there are old , albeit unreasoned, precedents that support defendant's position along with a few non-binding, unreasoned decisions from outside this Circuit.


POINT I

THE DISPUTES ARE MARITIME
IN NATURE

Plaintiff's position is that the standards by which contracts are evaluated for their maritime flavor have been changed and broadened dramatically in the last fifty years by the U.S. Supreme Court and more recently the Court of Appeals for the Second Circuit.


The district court in *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 281 F. Supp. 2d 530 (E.D.N.Y. 2003), thought that it was applying the law  set forth by the Second Circuit particularly in *Atlantic Mutual Insurance Co. v. Balfour MacLaine Int'l. Ltd.* (*In re Balfour MacLaine Int'l Ltd.*), 85 F.3d 68 (2d Cir. 1996).  In reversing the district court, the Second Circuit emphasized that the intervening Supreme Court decision in *Norfolk Southern Rwy Co. v. James S. Kirby, Pty Ltd.*, 543  U.S. 14 (2004) had altered the seascape and that both the subject matter of the contract and the subject matter of the dispute dictate whether there is admiralty jurisdiction. *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F3d 307, 2005 A.M.C. 1747 (2d Cir. 2005),


The district court  held that an ordinary comprehensive general liability insurance policy was not within the admiralty jurisdiction in respect of a tank-cleaning contractor when a

workman was injured working on a barge that the defendant was in the process of cleaning. The Circuit Court held that "the abiding instruction of the Supreme Court is that we should look to the contract's "'nature and character'" to see "whether it has 'reference to maritime service or maritime transactions,'" *Norfolk S. Ry Co.,* 125 S. Ct.at 393.[citations omitted}." The Second Circuit faulted the district court for not making a determination whether the underlying dispute was maritime. The Court looked beyond the name of the contract and even the text of the contract to the circumstances that gave rise to the inquiry and found that the comprehensive general liability policy was a maritime contract.

In *Ingersoll Milling Machine Co. v. M/V BODENA*, 829 F.2d 293, 301 (2d Cir. 1987), *cert. denied,* 484 U.S. 1042 (1991), the Second Circuit Court of Appeals determined that a contract between a shipper of goods and a freight forwarder was a maritime contract.

The analysis it followed to reach that conclusion was:

> However, the focus of our inquiry must be not on the name assigned to the contract, but rather on the nature of the services to be performed. It is the character of the work to be performed under the contract that is determinative of whether the agreement was maritime [citations omitted].If the subject matter of the contract, "'relat[es] to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment,'" it is fairly said to constitute a maritime contract. *CTI Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377 at 379 (quoting 1 Benedict on Admiralty, Sec. 183, at 11-6 (7th ed. 1981)). Accordingly, we turn to an examination of the services to be performed by Bernard under its contract with Ingersoll.

As discussed more fully in the accompanying Declaration by Marc Sturzenegger, executed the 20th day of August, 2008, most of the amounts of money awarded to Kalafrana by

the arbitrator involved vessel repairs.[1]    As the Second Circuit stated in *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., supra* at 313:

> The business of ship maintenance has long been recognized as maritime and the insurance claim arising out of a related on-board injury has more than a "speculative and attenuated" connection with maritime commerce, *Atlantic Mutual*, 968 F.2d at 200.

Recognizing that, in cases involving contracts, the determination of whether a contract is maritime requires a "conceptual rather than spatial" analysis referring to the Supreme Court decision in *Kossick v. United Food Co.*, 365 U.S. 731, 735, the *Folksamerica* court asked:

> What then is the subject matter of the contract in question?    "Under the old, now outdated rule [admiralty] jurisdiction was said to be reserved to 'contracts, claims and services *purely* maritime.' *Rea v. The Eclipse*, 135 U.S. 599, 608 (1890)(emphasis added).    The test has, however, been loosened

---

[1] The arbitrator award $400,674 to restore the vessel's main engine to class. Verified Complaint, Exh. A, Reasons for Award, p.14, ¶39.    The vessel's 3 diesel generator engines required repairs effected at a cost of $213,790.00 including rental of portable generator. P. 15, ¶44.  Corrosion on the vessel's stern ramp required repairs which cost €42,960. P. 16, ¶48. Repairs to one of the compressors in the vessel's refrigeration system  cost of €20,911 P. 17, ¶51. One of the air conditioning compressors was repaired for €23,090. P. 17,¶ 52. The main starting air compressors were repaired for €2,067.50. P.18, ¶54. Freshwater cooling pumps were repaired at a cost of €889.50. P. 18, ¶55. One of the fuel oil separators was repaired at a cost of €12,008.21. P. 18, ¶57.  The circulating pumps for the vessel's auxiliary boiler were repaired for €1,621.50. P. 18, ¶58.  Hydraulic oil leaks in the vessel's cargo elevator were repaired at a cost of €1,459.41. P. 18, ¶60.  The main engine exhaust was repaired at the cost of €3,500. P. 19, ¶61. The main engine lubricating oil coolers were repaired at a cost of €11,430. P.19, ¶62.

The Classification Society surveyors were paid €7,957.66 for their inspection on the vessel. P. 21, ¶69.  A manufacturer's service engineer attended the vessel during repairs costing €27,673. P. 21, ¶70.  Subsistence for crew members cost €4,757. P. 22,¶71.  Vessel agency costs at Genoa amounted to  €17,010.64 many of which were accepted by SEA GULL as its responsibility. P.22, ¶72.  The vessel radio station equipment was replaced at a cost of €1,935.70. P.22, ¶73.  In addition, one of SEA GULL's crewmembers was repatriated by KALAFRANA at a cost of US$775.00. P. 23, ¶74. And the value of spare parts was agreed at €9,000. P. 23, ¶75.

considerably." *Sirius*, 16 F.3d at 36 [parallel citations omitted].

In concluding that a particular insurance policy was a maritime contract, the Court of Appeals in *Sirius Insurance Company (UK) Limited v. Paul M. Collins*, 16 F.3d 34 (2d Cir. 1994) wrote:

> There are few objects - perhaps none - more essentially related to maritime commerce than vessels. They have no utility on land; they are taken ashore to make or keep them fit for use in the water, or to transport them from one body of water to another.

In *Detroit Trust Co. v. Steamer "Thomas Barlum,"* 293 U.S. 21, 48 (1934), the Supreme Court quoted *Tucker v. Alexandroff*, 183 U.S. 426, 438 and wrote:

> The ship from the moment the keel touches the water becomes a subject of admiralty jurisdiction, she acquires personality; she becomes confident to contract, is individually liable for her obligations, and is responsible for her torts.

In *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603 (1991), the Supreme Court reversed prior holdings that agency contracts were not admiralty contracts. The Supreme Court rejected proscription of a court rule but rather mandated that lower courts "look to the subject matter of the agency contract and determine whether the *services performed* under the contract are maritime in nature"(emphasis added). *Id.*, 612. This case is analogous. Exxon actually did not provide fuel to the vessel, but rather arranged for third parties to furnish fuel to the vessels. When *Exxon* submitted its bill to the defendant, the defendant did not pay. In this case, plaintiff Kalafrana engaged third parties to make various types of repairs to the vessel's engines, generators, stern ramp and related equipment. The arbitrator found that defendant Sea Gull was

5

obligated to pay Kalafrana for those maritime services. Thus, this Honorable Court is requested to look at the subject matter of the disputes as opposed to the name of the document that brought the parties together in order to determine whether there is admiralty subject matter jurisdiction. *Atlantic Mutual Insurance Co. v. Balfour Maclaine International Ltd.*, 968 F.2d 196, 200 (2d Cir. 1992) and *Maritima Petroleo E Engenharia Ltda. v. Ocean Rig*, 1 AS, 78 F.Supp.2d 162 (S.D.N.Y. 1999)(Scheindlin, J.).

In *Kossick v. United Fruit Company*, 365 U.S. 731 (1961), the Supreme Court held that a contract between a shipowner and a seaman that required the shipowner to indemnify the seaman for negligent treatment received at a United States Public Health Service Hospital arose out of the shipowner's duty to provide maintenance and cure. The Supreme Court reversed the view of the Second Circuit rejecting it as "too narrow." Even though the Supreme Court was somewhat dubious that the shipowner could have been obligated by the seaman to make the promise that the shipowner made with regard to the quality of care that the seaman received at the Public Health Service Hospital, nevertheless, the agreement was "sufficiently related to peculiar maritime concerns as not to put it, without more, beyond the pale of admiralty law." *Id.*738. Once again, the items claimed by Kalafrana and awarded by the arbitrator are for the most part out-of-pocket expenses incurred by Kalafrana in repairing the vessel to bring it to a level of seaworthiness that would allow the vessel to engage in maritime commerce. These were and are peculiar maritime concerns. In *Zeigler v. Rieff*, 637 F. Supp. 675, at 677 (S.D.N.Y. 1986)(Tenney, J.), the Court held that a storage contract for a boat was within the admiralty jurisdiction by reasoning as follows:

6

> Storing a vessel may increase or preserve the vessel's seaworthiness and, therefore, a storage contract has a direct connection with navigation.

This logic applies with equal force to the repairs to the M/V ASSIL by plaintiff.

The Supreme Court in *Kossick* noted that the boundaries of admiralty jurisdiction over contracts and "conceptual rather than spatial" and are difficult to draw. *Id.,* 735. In discussing historical references, the Court referred to cases holding that a contract to repair a vessel is maritime, a contract to insure a vessel is maritime, but a contract to build a ship is not maritime. Contracts for the hire of a vessel or officers and crew are maritime. While a bond covering cargo for general average is governed by admiralty law, an agreement to pay damages for another's breach of a charter is not. The Court did <u>not</u> illustrate the difficulty by citing a case dealing with a contract for the sale of a vessel. It concluded:

> The principal by reference to which the cases are supposed to fall on one side of the line or the other is an exceedingly broad one. "The only question is whether the transaction relates to ships and vessels, masters and mariners, as the agents of commerce.*** 1 Benedict Admiralty, 131.5.

*Id.* 736. Virtually every amount awarded to Kalafrana by the arbitrator relates to a ship.

It is hard to imagine anything with a more salty flavor than an ocean-going merchant vessel. While this is not an intellectual test, the word "salty" has been used in *Kossick, supra* at -742 and *Brave Bulk Transport Ltd. v. Spot-on Shipping Ltd.,* 2007 A.M.C. 2958, 2959 (S.D.N.Y. 2007) (holding that marine freight hedging agreements known as "forward freight agreements" are maritime).

In *Norfolk Southern Railway Co. v. James N. Kirby, Pty Ltd.,* 543 U.S. 14 (2004), the Supreme Court reiterated the case-by-case approach in defining the boundaries of

admiralty jurisdiction espoused in *Kossick* and found that damage to cargo carried under an intermodal bill of lading from Australia to Huntsville, Alabama while the cargo was on a Norfolk Southern train somewhere between the port of Savannah and Huntsville was within the admiralty contract jurisdiction.  In the eyes of the Second Circuit, the *Kirby* decision created new rules for the evaluation of whether a contract is maritime.  *Folksamerica, supra,* at 314.

Accordingly, as Kalafrana reads and understands *Kossick, Exxon, Ingersoll, Sirius, Kirby and Folksamerica,* a district court must in each case assess the maritime flavor of the nature and character of the underlying transactions and disputes and reject the notion that the form of the contract dictates the result.  Repairs and husbanding expenses are without doubt maritime.

## POINT II

### SUPPLEMENTAL JURISDICTION

28 U.S.C. § 1367 provides:

> The district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In this case, there is no dispute that the arbitration award with regard to wrongful arrest, interest and costs is within the admiralty jurisdiction of this Court.  The balance of the claims involves the repairs to the vessel and husbanding costs at Genoa.  The wrongful arrest claim arises out of the arrest of the vessel in Carrera, Italy by Sea Gull arising out of its claim for the value of the bunkers and fuel oil.  In other words, the arbitration award (Sturzenegger Declaration, Exhibit A) is a manuscript of unity which ties all of the claims together and it is within the province of this Court to deal with all of the claims so unified in a rendered and final award  which plaintiff prays this Court confirm.  *Roco Carriers, Ltd. v. M/V NURNBURG*

*EXPRESS*, 899 F.2d 1292 (2d Cir. 1990), *Kreatsoulas v. Freights of the Levant Pride*, 838 F. Supp. 147, 151 (S.D.N.Y. 1993); *Magana v. Hammer & Steel, Inc.*, 206 F. Supp. 2d 848, 843 (S.D. Tex. 2002).


## POINT III

## PLAINTIFF'S MOTION FOR LEAVE TO
## AMEND SHOULD BE GRANTED


Plaintiff cross-moves for a leave to amend its Verified Complaint, Petition for Confirmation of Award and Rule B Attachment Order by adding a new "second" cause of action which includes the legal costs incurred by Kalafrana in defending against the continuing litigation in the Tribunale di Massa by Sea Gull against Kalafrana and the vessel *in rem* which was wrongfully arrested in April, 2007 as held by the arbitrator. Notwithstanding this holding, Sea Gull continues to prosecute its claim against Kalafrana and the vessel *in rem* in the form of substitute security posted by Deutsche Bank S.p.A. The vessel remains under arrest in a legal sense. These ongoing costs thus far total $41,495.55 including the legal fees of Italian lawyers through August 7, 2008 and the cost of Bayside Services S.A. as well. Sturzenegger Declaration, ¶ 6. While the arbitrator awarded costs that were incurred back in April, 2007, these these costs were incurred subsequently and will be submitted to an arbitrator at London shortly.

In addition, a "fifth" cause of action has been added which isolates the costs incurred at the Port of Genoa between the time the vessel was tendered for delivery to Kalafrana by Sea Gull and the time that Sea Gull yielded its interest in the vessel on or about June 16, 2006.

Sturzenegger Declaration, ¶ 11-18.[2]  The parties had agreed, because of Sea Gull's poor cash position, that Kalafrana would advance monies to certain suppliers and contractors to pay for the vessel's regular port costs and other items which would typically be born by the owner of a vessel and typically not be the subject of a contract of sale, but which Kalafrana advanced. *Tramp Oil & Marine v. M/V MERMAID,* 805 F.2d 42 (1st Cir. 1986); 2 BENEDICT ON ADMIRALTY, Sec. 33, at 3-12-13 (7th Ed. 1986) and G. GILMORE & C. BLACK, THE LAW OF ADMIRALTY, 633-4 (2d Ed. 1975).  However, Sea Gull has not refunded any of these monies to Kalafrana and the arbitrator in paragraphs 65 through 75 of the Reasons for the Arbitration Award sets forth the bases of all of these separate and individual claims.  The total amount is $97,069.37 and the arbitrator also awarded interest which totals $11,500.85 through June 27, 2008.  Plaintiff has separated out these amounts from the Third Cause of Action in the original Complaint because these have a maritime character and nature that is not derivative of the contract of sale of the vessel and should survive even if the Court vacates the Order of Attachment in respect of the claims which are isolated in the Fourth Cause of Action in the Amended Complaint.

Finally, a "sixth" cause of action has been added to the original three in which the costs of the arbitration are now claimed against Sea Gull.  The arbitrator awarded costs to be assessed against Sea Gull and in favor of Kalafrana in paragraph F of the Arbitration Award at page 6. Bayside Services has now calculated that Kalafrana is entitled to seek costs totaling $100,632.57. This amount includes $13,430.01 that is attributable to recovery of the advances at Genoa ($97,069.37); $36,235.70 attributable to recovery of the costs and repairs to the engine's ramp and generators of the vessel totaling $430,236.60 after setting off the $79,113.40 claimed by Sea

---

[2] These amounts are included in the Third Cause of Action in the original Complaint.

Gull for the value of bunkers and lube oil.  Bayside also attributes $38,210.43 to the general cost of arbitration which are not allocable to any one particular item of damage, and finally, $12,756.43 to prosecution of the wrongful arrest claim in the arbitration. Sturzenegger Declaration, ¶ 18.

This motion for leave to amend is made pursuant to Rule 15(a), Federal Rules of Civil Procedure which provides that leave of Court is required to amend a pleading in these circumstances but that "leave shall be freely given when justice so requires."  *See Foman v. Davis*, 371 U.S .178 (1962), *Stamelman v. Fleishman-Hillard*, 2003 U.S. Dist. LEXIS 13328 (S.D.N.Y. 2003).

## POINT IV

### THE PRECEDENTS RELIED ON BY SEA GULL ARE OUTDATED

Plaintiff accepts the burden that it must prove in accordance with Rule B that its claims are an admiralty and maritime claim within the meaning of the Supplemental Rules.  Plaintiff has discussed above the current state of the law with regard to the admiralty jurisdiction of contracts. Sea Gull is living in the past where one could rent, insure, victual, crew, fuel, berth or repair a vessel within the admiralty but not buy one.  The Supreme Court ansd Second Circuit have expanded the boundaries.  Sea Gull relies most notably on the case of  *The Ada*, 250 Fed. 194, 196 (2d Cir. 1918).  *The Ada* decision is perhaps most remarkable by its failure to cite any cases supporting its illogical conclusion or furnish a hint of reasoning..  GILMORE & BLACK, THE LAW OF ADMIRALTY (2d Ed. 1975) page 26, discuss the fact that the cause of action for the sale of a vessel "might be thought to be included" within the admiralty jurisdiction "but actually" is not.

The authors cite *The Ada, Grand Banks Fishing Co. v. Steirun,* 114 F. Supp. 1 (D. Me. 1953)

*Flota Maritima v. M/V CIUDAD LA HABANA*, 181 F. Supp. 301 (D. Md. 1960), *aff'd.* 335 F.2d

619 (4th Cir. 1966) and *Richard Bertram & Co. v. Yacht Wanda,* 447 F.2d 966 (5th Cir. 1971).

GILMORE & BLACK point out in the same footnote 90 that the Supreme Court has never squarely

decided the point and refer also to a law review article at 6 STANFORD LAW REVIEW 540 (1954)

in which the authors wrote:

> This seemingly well-settled rule arose as an analogy to a case
> which is inconsistent with basic principles governing the
> admiralty jurisdiction of the United States courts. Even today,
> the precedent for such a rule is scant.

As set out in Point IB of Sea Gull's Memorandum of Law at page 5, the earliest referent

is *obiter dictum* in *Rea v. Steamer "Eclipse,"* 135 U.S. 599, 608 (1890). The Second Circuit in

*Sirius Insurance Company (UK) Limited v. Collins*, 16 F.3d 34 (2d Cir. 1994) characterized the

holding of the *Rea* decision as "old, now outdated." Virtually all of the cases that actually deal

with vessel sales rely on the *Ada* and the *Eclipse.*

Plaintiff would like to note in passing that at the top of page 6 of Sea Gull's Memorandum

there is a suggestion that the facts of *The Ada* are similar to this case. In *The Ada,* the charterer

apparently had an option to purchase the vessel and the Court was impressed by the fact that the

charter hire total was apparently equal to the purchase price. There is no charterparty involved in

the relationship between plaintiff and defendant in this case. The charterparty that Sea Gull

entered into was not with plaintiff Kalafrana. Sea Gull argues that this Court is bound by the

Second Circuit precedent and we certainly do not disagree with that jurisprudential principle.

However, Sea Gull acknowledges that a case of the vintage of *The Ada* can be implicitly

overruled through subsequent and, in this situation, much more recent decisions by both the Second Circuit Court of Appeals and the U.S. Supreme Court. Although in *Netherlands Amer. Steam Nav. Co. v. Gallagher, 282 Fed 171 175(2d Cir. 1922),* Judge Rogers wrote, "If a contract relates to a ship or the commerce on navigable waters, it is subject to maritime law, and is within the admiralty and maritime jurisdiction…." In the middle of page 8 of its brief, Sea Gull quotes a passage from *Armour & Co. v. Fort Morgan S.S. Co.,* 270 U.S. 253, 259 (1926) for the proposition that the Supreme Court approved of *The Ada* decision. However, there is nothing in the *Armour* decision that parallels the facts or the holding of *The Ada* decision.

Even if this Honorable Court determines that the $430,236.60 in the Fourth Cause of Action in the Proposed Amended Complaint(part of the amount claimed in the Third cause of Action in the Original Complaint), nevertheless,  the remaining claims total $264,348.03 of principle, interest and costs which are maritime claims and support the rule B attachment.

It is evident in the line of cases beginning with *Kossick,* then *Exxon,* and finally *Norfolk Southern* that the Supreme Court is not hesitant to expand the boundaries of admiralty jurisdiction in respect of contracts. The Second Circuit decision in *Sirius* can be read no other way than to accept the postulate that a merchant vessel is the very essence of maritime commerce. And, the decisions in *Ingersoll, Sirius* and *Folksamerica* following *Exxon* make plain that a district court in making a case-by-case determination should not be persuaded by mere nomenclature, but rather look to the activities and transactions themselves to taste the flavor.

## CONCLUSION

Defendant's motion should be denied and plaintiff's motion for

leave to amend should be granted.

Dated: New York, New York
      August 21, 2008

                                        Respectfully,

                                        **MAHONEY & KEANE, LLP**
                                        *Attorneys for Plaintiff*

                                        By: _____
                                        Christopher H. Mansuy
                                        76 Beaver Street, 10th Floor
                                        New York, New York 10005
                                        (212) 385-1422
                                        Our File:  3593