Francesca Morris
Harmony I. Loube
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York  10007-3189
Tel:  (212) 513-3200
Fax:  (212) 385-9010
E-mail:  francesca.morris@hklaw.com
        harmony.loube@hklaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALAFRANA SHIPPING LTD., <br><br> Plaintiff, <br><br> - against - <br><br> SEA GULL SHIPPING CO. LTD., <br><br> Defendant. | 08 Civ. 5299 (SAS) <br><br> **REPLY AFFIRMATION OF FRANCESCA MORRIS IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO VACATE AND REDUCE ATTACHMENT AND IN OPPOSITION TO THE MOTION TO AMEND THE <u>COMPLAINT</u>** |

I, Francesca Morris, declare under penalty of perjury that the following is true and correct:

1.      I am a member of the firm of Holland & Knight LLP, attorneys for Defendant, Sea Gull Shipping Co. Ltd. ("Sea Gull" or "Defendant") and I am duly admitted to practice before the United States District Court for the Southern District of New York.

2.      I am familiar with the facts and circumstances underlying this dispute and I am submitting this affirmation in support of Sea Gull's reply memorandum in support of its motion to vacate, in part, and reduce the attachment obtained by Kalafrana Shipping Ltd. ("Kalafrana") and in opposition to the motion of Kalafrana to amend the complaint.

3.      Attached hereto as Exhibit G is a true and correct copy of the transcript of the August 1, 2008 pre-motion hearing before this Court.

4.    On August 8, 2008, I received an email from Plaintiff's counsel, Christopher H. Mansuy of Mahoney & Keane LLP, which included two attachments.  The attachments were an Application Notice and a Freezing Injunction Order issued by the High Court of Justice, Queen's Bench Division, Commercial Court in London.  A true and correct copy of the August 8, 2008 email and two attachments are attached hereto as Exhibit H.

5.    On August 8, 2008, I responded by email to Mr. Mansuy informing him that Holland & Knight LLP has entered a limited appearance in the action pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, and that delivery of any documents to our office for any purposes other than that provided for under Rule E(8) of the Admiralty Rules is not acceptable service of process under the Federal Rules of Civil Procedure and is without effect.  My email of August 8, 2008 is attached hereto as Exhibit I.

6.    On July 10, 2008, during an initial telephone conference with Mr. Mansuy regarding this case, I stated to him that it is well established that a contract for sale of a vessel is not a maritime contract.  Later, I sent a letter to Mr. Mansuy providing citations to relevant precedent for this proposition.  The letter was attached as Exhibit C to my affirmation of August 7, 2008 in support of Sea Gull's motion to vacate and reduce the attachment.

I, Francesca Morris, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct.  Executed on August 28, 2008 in New York, New York.

_____
Francesca Morris

# 5572881_v1

EXHIBIT G

# In The Matter Of:

*KALAFRANA SHIPPING, v.*
*SEA GULL SHIPPING,*

---

*August 1, 2008*

---

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 881ZKALC.txt, Pages 1-17

**Word Index included with this Min-U-Script®**

KALAFRANA SHIPPING, v.
SEA GULL SHIPPING,

---

Page 1

```
          8R1zkalc          Conference
[1]   UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
[2]   - - - - - - - - - - - - - - - - - - - - - - - -x
[3]   KALAFRANA SHIPPING,
[4]                 Plaintiff,
[5]        v.                    08 CV 5299 (SAS)
[6]   SEA GULL SHIPPING,
[7]                 Defendant.
[8]   - - - - - - - - - - - - - - - - - - - - - - - -x
[9]                              August 1, 2008
                                 4:40 p.m.
[10]
      Before:
[11]
                 HON. SHIRA A. SCHEINDLIN,
[12]
                                 District Judge
[13]
                   APPEARANCES
[14]
      MAHONEY & KEANE LLP
[15]       Attorneys for Plaintiff
      BY:  CHRISTOPHER H. MANSUY
[16]
      HOLLAND & KNIGHT LLP
[17]       Attorneys for Defendant
      BY:  FRANCESCA MORRIS
[18]       HARMONY LOUBE
[19]

[20]
[21]
[22]
[23]
[24]
[25]
```

---

Page 2

```
[1]              (In open court)
[2]          THE DEPUTY CLERK:  All rise.
[3]      THE COURT:  Okay, please be seated.  Mr. Mansuy.
[4]      MR. MANSUY:  Yes, your Honor.
[5]      THE COURT:  Good afternoon.
[6]      MR. MANSUY:  Good afternoon.
[7]      THE COURT:  And Ms. Morris.
[8]      MS. MORRIS:  Good afternoon, your Honor.
[9]      THE COURT:  Good afternoon.  And Ms. Loube.
[10]     MS. LOUBE:  Good afternoon, your Honor.
[11]         THE COURT:  All right, good afternoon, all.
[12]     All right.  So I received a letter from Ms. Morris,
[13] first, dated July 28, 2008, and asking that this be turned into
[14] a premotion conference, and I assume you're both ready to do
[15] that, because I got an answering letter dated July 30th from
[16] Mr. Mansuy.  Oh, but I made one.  Mistake I read the two
[17] letters.  I wrote on top of the second letter "must see
[18] complaint," and then forgot to ask my Clerk to give me the
[19] complaint, so I wanted to review the complaint.  Anybody have
[20] it with them?
[21]     MR. MANSUY:  I do somewhere here.
[22]     THE COURT:  I meant to do it.  I wrote a note to
[23] myself, but to myself wasn't enough.  I had to ask somebody to
[24] pull it for me.
[25]     MS. MORRIS:  Your Honor, my copy has my writing all
```

---

Page 3

```
[1]  over it.
[2]      THE COURT:  Well, all right.  I mean either I can pull
[3]  it now the from ECF -- my Clerk might be doing it as we
[4]  speak -- you just did it.  He just printed a verified
[5]  complaint.  So it's not that long, right?  All right, it's
[6]  coming off our printer.  Forget it.  Just give me a minute,
[7]  folks.  Thank you.  I meant to do that, I forgot.
[8]      (Pause)
[9]      THE COURT:  Now, give me a minute to review it, but
[10] it's in nice big print so it won't take long.
[11]     Oh, you printed the wrong one, all right.  Great job,
[12] but wrong one.  Great job, but wrong one, 5299.
[13]     THE DEPUTY CLERK:  Oh.
[14]     THE COURT:  All right, thank you.
[15]     Can somebody look at paragraph five of the complaint
[16] where it says, "whereby defendant would sell the vessel to
[17] defendant."  Is there a typo there?
[18]     MR. MANSUY:  Yes, your Honor.
[19]     THE COURT:  What should it read?
[20]     MR. MANSUY:  It should read, "whereby defendant would
[21] sell the motor vessel to plaintiff."
[22]     THE COURT:  Thank you.  Okay.  Oops, wait one more
[23] second.  Okay.
[24]     All right, in any event I was starting to say for the
[25] record that I have reviewed the letter of July 28 from
```

---

Page 4

```
[1]  defendant who asks to make a motion to vacate the attachment in
[2]  the amount of $639,635.38, of which 119,810.68 has actually
[3]  been attached and says that -- maybe I shouldn't have said
[4]  vacated, but reduce the attachment to the amount of the
[5]  plaintiff's claim for wrongful arrest of a vessel, and that
[6]  claim is in the amount of $34,855.36 plus interest and costs.
[7]  And the basis for the motion is defendant's the view that this
[8]  claim is about the breach of a contract for the sale of a
[9]  vessel.  And defendant writes, "It's well established that a
[10] contract for the sale of a vessel is not a Maritime contract,"
[11] and it cites several cases for this proposition that I haven't
[12] had a chance to read, but one is a 1918 Second Circuit case,
[13] and then several Southern District cases -- two Southern
[14] District cases, one from 1987 one from 1963, and the 1987 case
[15] was affirmed by the Second Circuit in 1989.
[16]     Then I received a responding letter from Mr. Mansuy,
[17] and he understands the facts.  There is no difference of
[18] opinion.  He says, arbitration in London filed disputes between
[19] the parties and evolved out of the memorandum of agreement for
[20] the sale of the vessel.  So he knows that.  And he goes into
[21] the detail of what the arbitrator awarded.
[22]     And then in turning to the law, he says that the
[23] defendant overlooked and I'm quoting, "compelling decisions by
[24] the Supreme Court and Second Circuit expanding scope of
[25] admiralty jurisdiction in contract matters."  And he begins
```

---

Page 5

[1] with a 1961 Supreme Court case that held that the boundaries of
[2] admiralty contract jurisdiction are, "conceptual rather than
[3] spacious." That's probably my favorite quote of the year --
[4] conceptual rather than spacial. I haven't a clue what that
[5] means. And then citing another Supreme Court case from 1991
[6] where the Court said, the trend is to focus on the nature of
[7] the transaction, not the form. That doesn't seem too helpful,
[8] because the nature of this transaction is still the sale of a
[9] vessel. And then a third Supreme Court case of 2004 where the
[10] Supreme Court seemed to say, the inquiry is whether the
[11] principal objective of the contract is Maritime commerce.
[12]         I guess a broad reading of a contract of sale of a
[13] vessel is, is that the vessel that's being sold is going to be
[14] used in Maritime commerce, and that's what you do with boats.
[15] In fact, that's the next sentence in the letter, a vessel is
[16] the sine qua non of Maritime commerce. And then quoting Second
[17] Circuit 1994 case, "There are few objects, perhaps none, more
[18] essentially related to Maritime commerce than vessels." I
[19] don't know if that was written in the context of vacating the
[20] attachment, though.
[21]         And then finally citing a Second Circuit case from
[22] 2005 where the Second Circuit ruled, and I quote, the recent
[23] pronouncement of Norfolk Southern Railway -- that's the Supreme
[24] Court case that talked about the principal objective of the
[25] contract is what you look at -- calls for reconsideration of

Page 6

[1] our precedent. An articulated case-by-case approach in
[2] defining boundaries by asking the fundamental question -- again
[3] I'm quoting from the 2005 Second Circuit case -- what then is
[4] the subject matter of the contract in question, close quote.
[5]         So it sounds like a pure issue of law, it sounds like
[6] there will be no fact disputes. If it sounds interesting. If
[7] it's true, the Second Circuit hasn't ruled recently on the
[8] contract for the sale of a vessel.
[9]         From the cases cited by the plaintiff, I can't tell if
[10] any of those recent cases, the 1994 Second Circuit case or the
[11] 2005 circuit case, actually had to do with a Maritime
[12] attachment and whether or not it should stand, but whether it
[13] involved only the sale of a vessel.
[14]         But, anyway, the plaintiff is trying to fashion an
[15] argument that the law is shifting, even though it may not yet
[16] have shifted in either the Second Circuit or the Supreme Court.
[17]         But then the defendant asked for a prompt hearing.
[18] said it's entitled to a prompt hearing under Rule E(4)(f). And
[19] I wanted to talk to the defense counsel about that. If there's
[20] really no fact in dispute, and I've got a pure issue of law,
[21] what would I do with a hearing?
[22]         MS. MORRIS: Well, your Honor, that was partly because
[23] plaintiff's counsel also wanted to make a motion to confirm the
[24] arbitration award.
[25]         THE COURT: Oh.

Page 7

[1]         MS. MORRIS: And we were saying that, in fact, because
[2] what we're moving for is a prompt hearing, they shouldn't be
[3] heard at the same time; that they should -- you know, we could
[4] have a prompt hearing --
[5]         THE COURT: Right.
[6]         MS. MORRIS: -- and stretch it out for everyone --
[7]         THE COURT: No, I think you're right, Ms. Morris. If
[8] it's not a Maritime case, then the attachment should be reduced
[9] in the amount you said. But even so, let's say the attachment
[10] is reduced to the number you say -- I forgot what number that
[11] was already -- $34,000 plus interest and costs, they would
[12] still would want to move to confirm the arbitration award.
[13]         MS. MORRIS: They may well still want to confirm the
[14] arbitration award. But the fact is that this is a Lebanese
[15] country, company, so whether they would want to confirm the
[16] arbitration award of a company that has no other assets
[17] within --
[18]         THE COURT: Wait a minute, wait. This is a Lebanese
[19] company, which is this?
[20]         MS. MORRIS: Sea Gull Shipping.
[21]         THE COURT: Oh, defendant.
[22]         MS. MORRIS: Defendant. So the only possible assets
[23] that they're going to be able to attach from Sea Gull Shipping
[24] are electric funds as they come through the banking system.
[25]         THE COURT: Right.

Page 8

[1]         MS. MORRIS: If all they can get is that $35,000 --
[2]         THE COURT: Right.
[3]         MS. MORRIS: -- then they may want to confirm for that
[4] $35,000, both sides would be better off knowing how much was at
[5] risk and how much to put into the case before going ahead.
[6]         THE COURT: I agree with you. I need to decide this
[7] interesting and fairly limited issue. So I think --
[8]         MS. MORRIS: Your Honor, could --
[9]         THE COURT: But you don't need a hearing is what I'm
[10] saying.
[11]         MS. MORRIS: Oh, you mean --
[12]         THE COURT: You proposed a briefing schedule of
[13] August 7th for the moving papers, August 20 for response,
[14] August 28 for reply. That sounded fast and reasonable, but
[15] then you said you wanted a hearing in September. I don't need
[16] a hearing.
[17]         MS. MORRIS: If we don't need a hearing, then we're
[18] prepared to go ahead without one.
[19]         THE COURT: You tell me if you need a hearing.
[20]         MS. MORRIS: Not especially, your Honor.
[21]         THE COURT: Right. It sounds like agreed upon facts.
[22]         MS. MORRIS: Yes.
[23]         THE COURT: I've just read the complaint quickly,
[24] there is no doubt about it, this is the contract for the sale
[25] of a vessel.

Page 9

[1]     MS. MORRIS: Right.

[2]     THE COURT: Either Mr. Mansuy is right, the law is
[3] changing as we are speaking. We look to the real purpose of
[4] the contract, which is the sale of the vessel, and the vessel
[5] obviously is used for Maritime purposes. If that suddenly
[6] makes it enough, despite the older cases that say a contract
[7] for the sale of a vessel is not enough, let's talk about it.
[8] So since I don't usually take oral arguments, because I find
[9] people end up repeating their papers, what I do is take it on
[10] this end as part of the premotion conference so I -- can I hear
[11] you; is there anything you can add to your --

[12]     MS. MORRIS: Well, your Honor --

[13]     THE COURT: I mean, maybe since you didn't get the
[14] last word, you got his letter, maybe the best thing for you to
[15] do is reply orally to his letter, so to speak.

[16]     MS. MORRIS: Well, I would like to say about the Kirby
[17] decision, which is the most recent one, Norfolk Southern
[18] Railway.

[19]     THE COURT: That's the Supreme Court one?

[20]     MS. MORRIS: Yes. Everybody refers to it as Kirby in
[21] the Maritime Bar.

[22]     THE COURT: Okay.

[23]     MS. MORRIS: That decision was a mixed contract. I
[24] think the opening line is, this is a Maritime case about a
[25] train wreck.

Page 10

[2]     THE COURT: About what?

[2]     MS. MORRIS: A train wreck.

[3]     THE COURT: Train wreck?

[4]     MS. MORRIS: It's a Maritime case about a train wreck
[5] because it involved bills of laiding for goods that were being
[6] moved by vessel, and then by train. And it was during the
[7] train portion that there was -- I think they derailed, and
[8] anyway the cargo was damaged. And it was an issue about who
[9] was going to pay and how much were -- those particularly
[10] Maritime issues, which came to bear through the bills of
[11] laiding. That was a case where it was, what might be termed a
[12] mixed contract. There were issues that were Maritime, and then
[13] there were land issues. It was on a railway. Here we have --

[14]     THE COURT: What did the Supreme Court do?

[15]     MS. MORRIS: The Supreme Court decided that in that
[16] context it was a Maritime claim, and the bill of laiding made
[17] it a Maritime claim, because they foresaw that the vessel, and
[18] then the trains would be carrying the same cargo, and the bill
[19] of lading clauses went all the way through.

[20]     THE COURT: Okay.

[21]     MS. MORRIS: I think that this is a different
[22] situation.

[23]     THE COURT: Oh.

[24]     MS. MORRIS: Because this is a -- this is a contract
[25] that is just for one thing. It is purely one thing contract

Page 11

[1] for the sale of a vessel.

[2]     THE COURT: Sale of a vessel. But your adversary's
[3] point is, a vessel is the sine qua non of Maritime commerce. I
[4] mean what else -- you don't need a vessel to sit on land in the
[5] middle of a town, unless it's a ship from the 1600's that's
[6] become a museum. Other than that, vessels are in the water.

[7]     MS. MORRIS: That is true.

[8]     THE COURT: Yes.

[9]     MS. MORRIS: But every circuit court and every
[10] district court, and there are a number of others that looked at
[11] this case, has said for a couple hundred years that this is not
[12] a Maritime contact.

[13]     THE COURT: Right. You got as far as 1987, affirmed
[14] in 1989 and Second Circuit, but that's almost 19 years ago. I
[15] know you didn't put everything into your letter, but what else
[16] have you got?

[17]     MS. MORRIS: In that particular case, the plaintiff's
[18] lawyer was sanctioned for claiming that it was a Maritime
[19] contract.

[20]     THE COURT: True, but that's 19 years ago. And his
[21] point is that that was before Exxon versus Central Gulf, and
[22] before Kirby and before Sirius, Second Circuit, and before
[23] Folks America in the Second Circuit. So he's saying there is a
[24] shift. But you're saying every circuit, every district court.
[25] How recently do you get?

Page 12

[1]     MS. MORRIS: I don't have the most recent cases with
[2] me, so.

[3]     THE COURT: Do you remember?

[4]     MS. MORRIS: You know, I don't.

[5]     THE COURT: Do you --

[6]     MS. MORRIS: We might have some here.

[7]     THE COURT: Okay, good.

[8]     MS. MORRIS: 2001, your Honor.

[9]     THE COURT: From a circuit or district?

[10]     MS. MORRIS: Let's see. This is a Ninth Circuit case
[11] from 2001.

[12]     THE COURT: Still saying that the sale of a vessel is
[13] not a Maritime contract?

[14]     MS. MORRIS: I believe that is correct. Let me check.
[15] Yes, your Honor. And we have one here from 2005 as well.

[16]     THE COURT: From the district?

[17]     MS. MORRIS: Which is the district court for the
[18] District of Columbia.

[19]     THE COURT: Saying the same thing, the same --

[20]     MS. MORRIS: The same.

[21]     THE COURT: Sale of vessel.

[22]     MS. MORRIS: The interpretation of a Maritime
[23] contract, where the dispute is not inherently -- one is
[24] controlled by federal law -- and citation to Kirby. And then
[25] generally, however, the contract for the purchase of a vessel

---

Page 13

[1]  is not a Maritime contract and is, therefore, governed by the
[2]  appropriate state law.
[3]      THE COURT: The only possibility is that the issue
[4]  that Mr. Mansuy is raising here wasn't raised. Maybe the other
[5]  side didn't even argue the sale of a vessel is a Maritime
[6]  contact. I think he's trying to present something new and see
[7]  if it'll fly somewhere.
[8]      MS. MORRIS: He is, your Honor. And --
[9]      THE COURT: I think.
[10]     MS. MORRIS: -- I do understand that, but --
[11]     THE COURT: Yeah.
[12]     MS. MORRIS: I think this is a well settled principle
[13] of Maritime law. I understand what you're saying.
[14]     THE COURT: Maybe so. We'll see.
[15]     Okay, so basically your argument is very short. It
[16] just says settled precedent says, sale of a vessel won't count
[17] as a Maritime --
[18]     MS. MORRIS: That's correct, your Honor. Actually --
[19]     THE COURT: It won't support Maritime --
[20]     MS. MORRIS: The Second Circuit case, ADA --
[21]     THE COURT: Oh, yeah, 1918.
[22]     MS. MORRIS: From 1918.
[23]     THE COURT: Right.
[24]     MS. MORRIS: Is actually quite a similar case to the
[25] facts here.

---

Page 14

[2]      THE COURT: Oh, I'm sure. No, the only quarrel with
[2]  that one is it's 1918.
[3]      MS. MORRIS: So --
[4]      THE COURT: Yeah, that's the only question.
[5]      MS. MORRIS: So much Maritime law, your Honor.
[6]      THE COURT: So no problem. Okay, let's hear from Mr.
[7]  Mansuy since he's the one who is going to have to sort of
[8]  support this idea.
[9]      MR. MANSUY: Well, your Honor, I think that the ADA is
[10] of note. When you read it, you'll see that it cites no cases.
[11]     THE COURT: Right.
[12]     MR. MANSUY: And it really gives little in the way of
[13] reasoning why the decision was reached that way.
[14]     THE COURT: Well, you know, that doesn't really
[15] matter. I'm always bound by Second Circuit precedent, even
[16] when I think it's poorly reasoned, which has happened a number
[17] of times, particularly when they reversed me I think it is
[18] poorly reasoned; nonetheless, I'm bound.
[19]     MR. MANSUY: I understand, your Honor.
[20]     THE COURT: Yes.
[21]     MR. MANSUY: I think the Folks America --
[22]     THE COURT: I think the best example is Winter Storm.
[23] I never liked Winter Storm myself, but they reversed me. Yes.
[24]     MR. MANSUY: In the Folks America case --
[25]     THE COURT: Yes.

---

Page 15

[1]      MR. MANSUY: -- which was several years ago, the
[2]  Second Circuit, I believe, took the occasion to recommend that
[3]  in matters involving questions of admiralty jurisdiction, that
[4]  the district courts take a fresh look and apply the standards
[5]  that flow from the more recent Supreme Court cases instead of
[6]  being wed to earlier Second Circuit precedent.
[7]      THE COURT: So do you have any case yet that's done
[8]  what you would like me to do?
[9]      MR. MANSUY: Well, there is a district court case in
[10] Maryland, your Honor, that actually refers to the ADA and calls
[11] the result anomalous, and I know you're not bound by that.
[12]     THE COURT: No. But so did it actually say Maritime
[13] jurisdiction should be -- can be based on the sale of a vessel?
[14]     MR. MANSUY: No, your Honor.
[15]     THE COURT: No. What?
[16]     MR. MANSUY: It went -- it took some other facts
[17] and --
[18]     THE COURT: Went the other way.
[19]     MR. MANSUY: To reach the result.
[20]     THE COURT: So you don't have a case yet that says
[21] sale of vessel is a Maritime contract.
[22]     MR. MANSUY: That's correct.
[23]     THE COURT: So you'd like to make that new law.
[24]     MR. MANSUY: That's correct.
[25]     THE COURT: All right. Well, let's brief it on the

---

Page 16

[1]  schedule she proposed and see how fast I can get to it. It
[2]  sounds interesting.
[3]      MR. MANSUY: Would your Honor consider my submitting a
[4]  motion to confirm?
[5]      THE COURT: No. I think Ms. Morris has the better
[6]  point there. We ought to know what's at stake. Because if I
[7]  conclude, albeit reluctantly, that I'm bound by higher
[8]  authority which absolutely precludes sale of vessels from being
[9]  a Maritime contract, should I end up taking that view, your
[10] attachment should be reduced to 35,000 plus interest, and
[11] that's the end of it, and then you can debate together what to
[12] do about it.
[13]     MR. MANSUY: Okay.
[14]     THE COURT: I mean, maybe I don't need another motion
[15] you can work something out. I don't know.
[16]     MR. MANSUY: Thank you.
[17]     THE COURT: They may just say keep the 35 and let's
[18] move on, I don't know.
[19]     MR. MANSUY: Okay.
[20]     THE COURT: Okay, so I think we should get this done
[21] on the schedule she proposed working throughout August for you
[22] folks, and then I'll turn to it.
[23]     MR. MANSUY: That's fine.
[24]     THE COURT: All right.
[25]     MR. MANSUY: Thank you.

---

KALAFRANA SHIPPING, v.
SEA GULL SHIPPING,

Page 17

[1]        THE COURT:  I do like one side or the other or both to
[2]    order these, because I don't have oral argument on the other
[3]    end.  So I would like to have a transcript for today.
[4]        MR. MANSUY:  Okay.
[5]        THE COURT:  Thank you.
[6]        MR. MANSUY:  I prepared a scheduling order, but it
[7]    really doesn't say anything.
[8]        THE COURT:  No, then I don't -- oh, you mean -- no, I
[9]    don't need it.  We're going right to the motion and I know the
[10]   dates without it.
[11]       MR. MANSUY:  There is no discovery.
[12]       THE COURT:  No.  I read the dates into the record.
[13]   What's nice about this motion, it must be the rarest of all
[14]   motions.  There is no facts.  I mean, everybody agrees this is
[15]   a sale of a vessel.  I have a one line fact section, this case
[16]   involved the sale of vessel, and I just get to the law.
[17]       MR. MANSUY:  That's correct.
[18]       THE COURT:  Good.  All right.  Well, that will be nice
[19]   for a change.  Okay.  Thanks, all right.
[20]       MS. MORRIS:  Thank you your Honor.
[21]       (Adjourned)
[22]
[23]
[24]
[25]

This Page Intentionally Left Blank

KALAFRANA SHIPPING, v.
SEA GULL SHIPPING,

August 1, 2008

**$**

$34,000 7:11
$35,000 8:1,4

**1**

1600's 11:5
19 11:14,20
1918 13:21,22;14:2
1987 11:13
1989 11:14

**2**

20 8:13
2001 12:8,11
2005 12:15
28 8:14

**3**

35 16:17
35,000 16:10

**7**

7th 8:13

**A**

able 7:23
absolutely 16:8
actually 13:24;15:10,12
Actually 13:18
ADA 13:20;14:9;15:10
add 9:11
Adjourned 17:21
admiralty 15:3
adversary's 11:2
affirmed 11:13
ago 11:14,20;15:1
agree 8:6
agreed 8:21
agrees 17:14
ahead 8:5,18
albeit 16:7
almost 11:14
always 14:15
America 11:23;14:21,24
amount 7:9
anomalous 15:11
apply 15:4
appropriate 13:2
arbitration 7:12,14,16
argue 13:5
argument 13:15;17:2
arguments 9:8
assets 7:16,22
attach 7:23
attachment 7:8,9;16:10
August 8:13,13,14;16:21

**B**

authority 16:8
award 7:12,14,16

**B**

banking 7:24
Bar 9:21
based 15:13
basically 13:15
bear 10:10
become 11:6
best 9:14;14:22
better 8:4;16:5
bill 10:16,18
bills 10:5,10
both 8:4;17:1
bound 14:15,18;15:11;
  16:7
brief 15:25
briefing 8:12

**C**

calls 15:10
came 10:10
can 8:1;9:10,11;15:13;
  16:1,11,15
cargo 10:8,18
carrying 10:18
case 7:8;8:5;9:24;10:4,11;
  11:11,17;12:10;13:20,24;
  14:24;15:7,9,20;17:15
cases 9:6;12:1;14:10;15:5
Central 11:21
change 17:19
changing 9:3
check 12:14
circuit 11:9;24;12:9
Circuit 11:14,22,23;
  12:10;15:20;14:15;15:2,6
citation 12:24
cites 14:10
claim 10:16,17
claiming 11:18
clauses 10:19
Columbia 12:18
commerce 11:3
company 7:15,16,19
complaint 8:23
conclude 16:7
conference 9:10
confirm 7:12,13,15;8:3;
  16:4
consider 16:3
contact 11:12;13:6
context 10:16
contract 8:24;9:4,6,23;
  10:12,24,25;11:19;12:13,
  23,25;13:1;15:21;16:9
controlled 12:24
costs 7:11
count 13:16
country 7:15

**D**

couple 11:11
court 11:9,10,24;12:17;
  15:9
Court 9:19;10:14,15;15:5
COURT 7:5,7,18,21,25;
  8:2,6,9,12,19,21,23;9:2,13,
  19,22;10:1,3,14,20,23;
  11:2,8,13,20;12:3,5,7,9,12,
  16,19,21;13:3,9,11,14,19,
  21,23;14:1,4,6,11,14,20,
  22,25;15:7,12,15,18,20,23,
  25;16:5,14,17,20,24;17:1,
  5,8,12,18
courts 15:4

**D**

damaged 10:8
dates 17:10,12
debate 16:11
decide 8:6
decided 10:15
decision 9:17,23;14:13
defendant 7:21
Defendant 7:22
derailed 10:7
despite 9:6
different 10:21
discovery 17:11
dispute 12:23
district 11:10,24;12:9,16,
  17;15:4,9
District 12:18
done 15:7;16:20
doubt 8:24
during 10:6

**E**

earlier 15:6
Either 9:2
electric 7:24
else 11:4,15
end 9:9,10;16:9,11;17:3
enough 9:6,7
especially 8:20
even 7:9;13:5;14:15
everybody 17:14
Everybody 9:20
everyone 7:6
example 14:22
Exxon 11:21

**F**

fact 7:1,14;17:15
facts 8:21;13:25;15:16;
  17:14
fairly 8:7
far 11:13
fast 8:14;16:1
federal 12:24
find 9:8

**F**

fine 16:23
flow 15:5
fly 13:7
folks 16:22
Folks 11:23;14:21,24
foresaw 10:17
forgot 7:10
fresh 15:4
funds 7:24

**G**

generally 12:25
gives 14:12
good 12:7
Good 17:18
goods 10:5
governed 13:1
Gulf 11:21
Gull 7:20,23

**H**

happened 14:16
hear 9:10;14:6
heard 7:3
hearing 7:2,4;8:9,15,16,
  17,19
higher 16:7
Honor 8:8,20;9:12;12:8,
  15;13:8,18;14:5,9,19;
  15:10,14;16:3;17:20
hundred 11:11

**I**

idea 14:8
inherently 12:23
instead 15:5
interest 11:16;10
interesting 8:7;16:2
interpretation 12:22
into 8:5;11:15;17:12
involved 15:17;16
involving 15:3
issue 8:7;10:8;13:3
issues 10:10,12,13

**J**

jurisdiction 15:3,13

**K**

keep 16:17
Kirby 9:16,20;11:22;12:24
knowing 8:4

**L**

lading 10:19
laiding 10:5,11,16
land 10:13;11:4

**L**

last 9:14
law 9:2;12:24;13:2,13;
  14:5;15:23;17:16
lawyer 11:18
Lebanese 7:14,18
letter 9:14,15;11:15
liked 14:23
limited 8:7
line 9:24;17:15
little 14:12
look 9:3;15:4
looked 11:10

**M**

makes 9:6
Mansuy 13:3;4;14:7
MANSUY 14:9;12,19,21,
  24;15:1,9,14,16,19,22,24;
  16:3,13,16,19,23,25;17:4,
  6,11,17
Maritime 7:8;9:5,21,24;
  10:4,10,12,16,17;11:3,12,
  18;12:13,22;13:3,13,17,
  19;14:5;15:12,21;16:9
Maryland 15:10
matter 14:15
matters 15:3
may 7:13;8:3;16:17
maybe 9:13,14;16:14
Maybe 13:4,14
mean 8:11;9:13;11:4;
  16:14;17:8,14
middle 11:5
might 10:11;12:6
minute 7:18
mixed 9:23;10:12
more 15:5
Morris 7:7;16:5
MORRIS 7:1,6,13,20,22;
  8:1,3,8,11,17,20,22;9:1,12,
  16,20,23;10:2,4,15,21,24;
  11:7,9,17;12:1,4,6,8,10,14,
  17,20,22;13:8,10,12,18,20,
  22,24;14:3;15:3,5;17:20
most 9:17;12:1
motion 16:4,14;17:9,13
motions 17:14
move 7:12;16:18
moved 10:6
moving 7:2;8:13
much 8:4,5;10:9;14:5
museum 11:6
must 17:13
myself 14:23

**N**

need 8:6;9,15,17,19;11:4;
  16:14;17:9
new 13:6;15:23
nice 17:13,18
Ninth 12:10

KALAFRANA SHIPPING, v.
SEA GULL SHIPPING,

August 1, 2008

non 11:3
nonetheless 14:18
Norfolk 9:17
note 14:10
number 7:10,10;11:10;
14:16

**O**

obviously 9:5
occasion 15:2
off 8:4
older 9:6
one 8:18;9:17,19;10:25,
25;12:15,23;14:2,7;17:1,15
only 7:22;13:3;14:1,4
opening 9:24
oral 9:8;17:2
orally 9:15
order 17:2,6
others 11:10
ought 16:6
out 7:6;16:15

**P**

papers 8:13;9:9
part 9:10
particular 11:17
particularly 10:9;14:17
pay 10:9
people 9:9
plaintiff's 11:17
plus 7:11;16:10
point 11:3,21;16:6
poorly 14:16,18
portion 10:7
possibility 13:3
possible 7:22
precedent 13:16;14:15;
5:6
precludes 16:8
premotion 9:10
prepared 8:18;17:6
present 13:6
principle 13:12
problem 14:6
prompt 7:2,4
proposed 8:12;16:1,21
purchase 12:25
purely 10:25
purpose 9:3
purposes 9:5
put 8:5;11:15

**Q**

qua 11:3
quarrel 14:1
quickly 8:23
quite 13:24

**R**

railway 10:13
Railway 9:18
raised 13:4
raising 13:4
rarest 17:13
reach 15:19
reached 14:13
read 8:23;14:10;17:12
real 9:3
really 14:12,14;17:7
reasonable 8:14
reasoned 14:16,18
reasoning 14:13
recent 9:17;12:1;15:5
recently 11:25
recommend 15:2
record 17:12
reduced 7:8,10;16:10
refers 9:20;15:10
reluctantly 16:7
remember 12:3
repeating 9:9
reply 8:14;9:15
response 8:13
result 15:11,19
reversed 14:17,23
right 7:7;9:2;15:25;16:24;
17:9,18,19
Right 7:5,25;8:2,21;9:1;
11:13;13:23;14:11
risk 8:5

**S**

sale 8:24;9:4,7;11:1;
12:12;13:5,16;15:13,21;
16:8;17:15,16
Sale 11:2;12:21
same 7:3;10:18;12:19,19,
20
sanctioned 11:18
saying 7:1;8:10;11:23,24;
12:12;13:13
Saying 12:19
schedule 8:12;16:1,21
scheduling 17:6
Sea 7:20,23
Second 11:14,22,23;
13:20;14:15;15:2,6
section 17:15
September 8:15
settled 13:12,16
several 15:1
shift 11:24
ship 11:5
Shipping 7:20,23
short 13:15
side 13:5;17:1
sides 8:4
similar 13:24

sine 11:3
Sirius 11:22
sit 11:4
situation 10:22
somewhere 13:7
sort 14:7
sounded 8:14
sounds 8:21;16:2
Southern 9:17
speak 9:15
speaking 9:3
stake 16:6
standards 15:4
state 13:2
still 7:12,13
Still 12:12
Storm 14:22,23
stretch 7:6
submitting 16:3
suddenly 9:5
support 13:19;14:8
Supreme 9:19;10:14,15;
15:5
sure 14:1
system 7:24

**T**

talk 9:7
termed 10:11
Thanks 17:19
therefore 13:1
throughout 16:21
times 14:17
today 17:3
together 16:11
took 15:2,16
town 11:5
train 9:25;10:2,4,6,7
Train 10:3
trains 10:18
transcript 17:3
true 11:7
True 11:20
trying 13:6
turn 16:22

**U**

unless 11:5
up 9:9;16:9
upon 8:21
used 9:5
usually 9:8

**V**

versus 11:21
vessel 8:25;9:4,4,7;10:6,
17;11:1,2,3,4;12:12,21,25;
13:5,16;15:13,21;17:15,16
vessels 11:6;16:8
view 16:9

**W**

wait 7:18
Wait 7:18
water 11:6
way 10:19;14:12,13;15:18
wed 15:6
what's 16:6
What's 17:13
Winter 14:22,23
within 7:17
without 8:18;17:10
word 9:14
work 16:15
working 16:21
wreck 9:25;10:2,3,4

**Y**

years 11:11,14,20;15:1

EXHIBIT H

## Loube, Harmony I (NYC - X73383)

| | |
|---|---|
| **From:** | Christopher Mansuy [cmansuy@mahoneykeane.com] |
| **Sent:** | Friday, August 08, 2008 1:54 PM |
| **To:** | Morris, Francesca (NYC - X73431); Loube, Harmony I (NYC - X73383) |
| **Subject:** | FW: KALAFRANA SHIPPING LTD -v- SEA GULL SHIPPING CO .SARL |

**Attachments:** Sealed Application Notice for 14 August SCAN6895_000.pdf; Amended Order SCAN6894_000.pdf

Dear Gentle ladies:
We have been asked to forward to you the attached documents pertaining to a proceeding in London along with the email below.

Best regards,
Chris Mansuy
Mahoney & Keane LLP
76 Beaver Street, 10th Floor
New York, New York  10005
Tel: 212-385-1422(ext. 13)
Fax: 212-385-1605
Cell: 973-738-2356

**From:** Johnny Johnson
**Sent:** 08 August 2008 18:19
**To:** 'seagull@terra.net.lb'
**Subject:** KALAFRANA SHIPPING LTD -v- SEA GULL SHIPPING CO .SARL

To: SEA GULL SHIPPING CO. SARL

We attach by way of service sealed Application Notice which will be heard by the Court on 14th August. We also attach an Amended Order by way of service. Please note that the only change from the prior order is in para 9(1) in that (i) Sea Gull Shipping Co SARL as Respondents are required to give disclosure under that paragraph of all their assets WORLDWIDE, and (ii) that disclosure must be provided by 4pm London time on Monday 11th August.

Regards

Davies Johnson & Co

This email (including any attachments) is intended for the addressee only, is confidential and may be legally privileged. If you are no the addressee you are on notice of its status. You may not disclose, copy, forward or otherwise use it. If you have received this email in error then please contact us on 01752 226020. Please also delete the email and any attachments from your computer system.

While Davies Johnson & Co takes care to protect its systems from virus attacks and believes that this e-mail (including any attachments) is free from any virus or similar defect, it is the responsibility of the recipient to ensure that it is virus free. Davies Johnson & Co does not accept any responsibility for any loss or damage resulting from the recipient receiving, opening or using this e-mail.

Davies Johnson & Co, The Old Harbour Office, Guy's Quay, Sutton Harbour, Plymouth PL4 0ES,
Tel: +44 (0)1752 226020,Fax: +44 (0)1752 225882
E-Mail: admin@djco.co.uk  Website: www.djco.co.uk

*Also in Geneva*

**Partners**: Jeremy Davies, Jonathan Johnson, Jane Ward, Andrew Fox
**Consultant** Robert McCunn

8/27/2008

# Application Notice

• You must complete Parts A and B, and Part C if applicable
• Send any relevant fee and the completed application notice to the court with any draft order, witness statement or other evidence
• It is for you (and not the court) to serve this application notice

| In The | High Court of Justice Queen's Bench Division Commercial Court Royal Courts of Justice |
|---|---|
| Claim No. | **2008 folio 788** |
| Claimant(s) (including ref.) | KALAFRANA SHIPPING LTD |
| Defendant(s) (including ref.) | SEA GULL SHIPPING CO. SARL |
| Date | 6 August 2008 |

**You should provide this information for listing the application**

Time estimate :(hours) **15** (mins)

Is this agreed by all parties? Yes ☐   No ☒

Please always refer to the Commercial Court Guide for details of how applications should be prepared and will be heard, or in a small number of exceptional cases can be dealt with on paper

*[Court stamp: SUPREME COURT OF JUDICATURE, ADMIRALTY & COMMERCIAL REGISTRY, 8 AUG 2008]*

## Part A

1. Where there is more than one claimant or defendant, specify which claimant or defendant

We Davies Johnson and Co on behalf of the Claimant

The hearing of this application will take place at ........ o'clock on the ...14..... day of ...August 2008. before the Commercial Court, Royal Courts of Justice Strand, London  WC2A 2LL

2. State clearly what order you are seeking (if there is room) or otherwise refer to a draft order (which must be attached)

intend(s) to apply for an order (a draft of which is attached) that(2)

(1) THE FREEZING INJUNCTION ISSUED BY THE HONOURABLE MRS. JUSTICE SWIFT AGAINST THE DEFENDANT ON 1ST AUGUST 2008 BE CONTINUED UNTIL FURTHER ORDER OF THE COURT.

(2) THE CLAIMANT/APPLICANT BE AWARDED THE COSTS OF THE APPLICATION FOR THE SAID FREEZING INJUNCTION AND THE COSTS OF THE HEARING ON THE RETURN DATE, TO BE SUMMARILY ASSESSED IF NOT AGREED.

3. Briefly set out why you are seeking the order. Identify any rule or statutory provision

Because

(1) THE CIRCUMSTANCES GIVING RISE TO THE CLAIM HAVE NOT CHANGED SINCE THE ORDER WAS GRANTED ON 1 AUGUST 2008; AND

(2) THE CLAIMANT HAS AN ARBITRAL AWARD AGAINST THE DEFENDANT AND THE INJUNCTION IS NECESSARY TO PREVENT THE DEFENDANT FROM DISPOSING OF OR OTHERWISE DISSIPATING ITS ASSETS AND FUNDS;

(3) THE CLAIMANT IS THE SUCCESSFUL PARTY ON ITS APPLICATION FOR THE FREEZING INJUNCTION.

The court office at the Admiralty & Commercial Registry, Royal Courts of Justice, Strand, London WC2A 2LL

is open from 10am to 4.30 pm Monday to Friday. When corresponding with the court please address forms or letters to the Clerk to the Commercial Court and quote the claim number.

N244 (CC) - w3 - Application Notice (4.99)

**Part B**

(The claimant)(The defendant)[1] wishes to rely on:

The attached (witness statement)(affidavit) [X] (the claimant)(the defendant)'s[1] statement of case [ ]

Evidence in Part C overleaf in support of this application [ ]

| Signed | | Position or office held (if signing on behalf of firm, company or corporation) | Jonathan Mark Milne Johnson<br>Partner, Davies Johnson & Co |
|---|---|---|---|

Applicant 'solicitor

4. If you are not already a party to the proceedings, you must provide an address for service of documents

Address to which documents about this claim should be sent (including the reference if appropriate)[4]

| Davies Johnson & Co<br>The Old Harbour Office<br>Guy's Quay, Sutton Harbour<br>PLYMOUTH | | If applicable | |
|---|---|---|---|
| | | Tel. no. | 01754 226020 |
| | | Fax no. | 01752 225882 |
| | | DX no. | 8254 PLYMOUTH |
| Postcode | PL4 0ES | Email | jg@djco.co.uk |

**Part C**

Claim No. | 2008 Folio 788

(Note: Part C should only be used where it is convenient to enter here the evidence in support of the application, rather than to use witness statements or affidavits)

(The claimant)(The defendant)[1] wishes to rely on the following evidence in support of this application:

**Statement of Truth**

*(I believe)(The applicant believes)(The claimant believes) that the facts stated in this application notice are true.

* I am duly authorised by the claimant to sign this statement.

Full Name        Jonathan Mark Milne Johnson

Name of claimant's solicitor's firm        Davies Johnson & Co

Signed _____        Position or office held        Partner
Applicant's Solicitor                                                    (If signing on behalf of firm, company or corporation)

Date        6 April 2008.

2008 Folio 788

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
COMMERCIAL COURT

B E T W E E N :

**KALAFRANA SHIPPING LTD**

Claimant

-and-

**SEA GULL SHIPPING CO. SARL**

Defendant

---

APPLICATION NOTICE

---

Davies Johnson & Co
The Old Harbour Office
Guy's Quay
Sutton Harbour,
Plymouth PL4 0ES
Ref: JMD/JG/02B0040/2

2008 Folio 788

**IN THE HIGH COURT OF JUSTICE**

**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**



**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND IN THE MATTER OF AN ARBITRATION**

**BEFORE THE HONOURABLE MRS JUSTICE SWIFT**

**BETWEEN:**

### KALAFRANA SHIPPING LTD

**Claimant/Applicant**

-and-

### SEA GULL SHIPPING CO. SARL

**Defendant/Respondent**

### PENAL NOTICE

**If you SEA GULL SHIPPING CO. SARL disobey this order you may be held to be in contempt of court and may be imprisoned, fined or have your assets seized.**

**Any other person who knows of this order and does anything which helps or permits the Respondent to breach the terms of this order may also be held to be in contempt of court and may be imprisoned, fined or have their assets seized.**

### THIS ORDER

1.  This is a Freezing Injunction made against **SEA GULL SHIPPING CO. SARL** ("the Respondent") on 1 August 2008 by Mrs Justice Swift on the application of KALAFRANA SHIPPING LTD ("the Applicant"). The Judge read the Affidavits listed in Schedule A and accepted the undertakings set out in Schedule B at the end of this Order.

1

2.     This order was made at a hearing without notice to the Respondent.  The Respondent has a right to apply to the court to vary or discharge the order – see paragraph 13 below.

3.     There will be a further hearing in respect of this order on 14 August at 2 pm ("the return date").

4.     If there is more than one Respondent-

    (a)     unless otherwise stated, references in this order to "the Respondent" mean both or all of them; and

    (b)     this order is effective against any Respondent on whom it is served or who is given notice of it.

## FREEZING INJUNCTION

5.     Until the return date or further order of the court, the Respondent must not-

    (1)     remove from England and Wales any of his assets which are in England and Wales up to the value of **US\$ 1,000,000 (One Million United States Dollars)**; or

    (2)     in any way dispose of, deal with or diminish the value of any of his assets whether they are in or outside England and Wales up to the same value.

6.     Paragraph 5 applies to all the Respondent's assets whether or not they are in his own name and whether they are solely or jointly owned.  For the purpose of this order the Respondent's assets include any asset which he has the power, directly or indirectly, to dispose of or deal with as if it were his own. The Respondent is to be regarded as having such power if a third party holds or controls the asset in accordance with his direct or indirect instructions.

7.     This prohibition includes the following assets in particular-

    (a) Any money in the possession of and/or under the control of and/or attached by **JPMorgan Chase Bank, N.A.** of New York or American;

    (b) Any money in the possession of and/or under the control of and/or attached by **American Express Bank** of New York;

    (c) Any sums due or owing to the Respondents from **Scandinavian Shipping Invest A/S;** and

    (d) Any sums due or owing to the Respondents from **AQUAGLORY MARINE Limited.**

2

8.    If the total value free of charges or other securities ("unencumbered value") of the Respondent's assets in England and Wales exceeds US$ 1,000,000, the Respondent may remove any of those assets from England and Wales or may dispose of or deal with them so long as the total unencumbered value of the Respondent's assets still in England and Wales remains above US$ 1,000,000.

(2)    If the total unencumbered value of the Respondent's assets in England and Wales does not exceed US$ 1,000,000, the Respondent must not remove any of those assets from England and Wales and must not dispose of or deal with any of them. If the Respondent has other assets outside England and Wales, he may dispose of or deal with those assets outside England and Wales so long as the total unencumbered value of all his assets whether in or outside England and Wales remains above US$ 1,000,000.

## PROVISION OF INFORMATION

9.    (1)    Unless paragraph (2) applies, the Respondent must AT OR BEFORE 4 pm on 11 August 2008 and to the best of his ability inform the Applicant's solicitors of all his assets worldwide exceeding US$1,000 in value whether in his own name or not and whether solely or jointly owned, giving the value, location and details of all such assets.

(2)    If the provision of any of this information is likely to incriminate the Respondent, he may be entitled to refuse to provide it, but is recommended to take legal advice before refusing to provide the information. Wrongful refusal to provide the information is contempt of court and may render the Respondent liable to be imprisoned, fined or have his assets seized.

10.    Within 7 working days after being served with this order, the Respondent must swear and serve on the Applicant's solicitors an affidavit setting out the above information.

## EXCEPTIONS TO THIS ORDER

11.    (1)    This order does not prohibit the Respondent from spending US$ 1,000 a week towards its ordinary business expenses and also a reasonable sum on legal advice and representation. But before spending any money the Respondent must tell the Applicant's legal representatives where the money is to come from.

(2)    This order does not prohibit the Respondent from dealing with or disposing of any of his assets in the ordinary and proper course of business.

(3)    The Respondent may agree with the Applicant's legal representatives that the above spending limits should be increased or that this order

3

should be varied in any other respect, but any agreement must be in writing.

(4)    The order will cease to have effect if the Respondent-

    (a)    provides security by paying the sum of **US$ 1,000,000** into court, to be held to the order of the court; or

    (b)    makes provision for security in that sum by another method agreed with the Applicant's legal representatives.

## COSTS

12.    The costs of this application are reserved to the judge hearing the application on the return date.

## VARIATION OR DISCHARGE OF THIS ORDER

13.    Anyone served with or notified of this order may apply to the court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicant's solicitors. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's solicitors in advance.

## INTERPRETATION OF THIS ORDER

14.    A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or on his instructions or with his encouragement.

15.    A Respondent which is not an individual which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

## PARTIES OTHER THAN THE APPLICANT AND RESPONDENT

16.    **Effect of this order**

It is a contempt of court for any person notified of this order knowingly to assist in or permit a breach of this order. Any person doing so may be imprisoned, fined or have their assets seized.

17.    **Set off by banks**

This injunction does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the respondent before it was notified of this order.

4

18.   **Withdrawals by the** Respondent

No bank need enquire as to the application or proposed application of any money withdrawn by the Respondent if the withdrawal appears to be permitted by this order.

19.   **Persons outside England and Wales**

(1)   Except as provided in paragraph (2) below, the terms of this order do not affect or concern anyone outside the jurisdiction of this court.

(2)   The terms of this order will affect the following persons in a country or state outside the jurisdiction of this court -

(a)   the Respondent or his officer or agent appointed by power of attorney;

(b)   any person who-

(i)   is subject to the jurisdiction of this court;

(ii)   has been given written notice of this order at his residence or place of business within the jurisdiction of this court; and

(iii)   is able to prevent acts or omissions outside the jurisdiction of this court which constitute or assist in a breach of the terms of this order; and

(c)   any other person, only to the extent that this order is declared enforceable by or is enforced by a court in that country or state.

20.   **Assets located outside England and Wales**

Nothing in this order shall, in respect of assets located outside England and Wales, prevent any third party from complying with-

(1)   what it reasonably believes to be its obligations, contractual or otherwise, under the laws and obligations of the country or state in which those assets are situated or under the proper law of any contract between itself and the Respondent; and

(2)   any orders of the courts of that country or state, provided that reasonable notice of any application for such an order is given to the Applicant's solicitors.

## COMMUNICATIONS WITH THE COURT

All communications to the court about this order should be sent to Room EB09, Royal Courts of Justice, Strand, London WC2A 2LL quoting the case number.  The telephone number is 020 7947 6826.

The offices are open between 10 a.m. and 4.30 p.m. Monday to Friday.

## SCHEDULE A

### AFFIDAVITS

The Applicant relied on the following affidavits-

(1)       Affidavit of Marc Sturzenegger dated 31st July 2008, filed on behalf of the Applicant

## SCHEDULE B

### UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT

(1)     If the court later finds that this order has caused loss to the Respondent, and decides that the Respondent should be compensated for that loss, the Applicant will comply with any order the court may make.

(2)     As soon as practicable the Applicant will issue and serve an arbitration claim form in the form of the draft produced to the court.

(3)     The Applicant will serve upon the Respondent as soon as practicable:-

  (i)     copies of the affidavits and exhibits containing the evidence relied upon by the Applicant, and any other documents provided to the court on the making of the application;

  (ii)    the arbitration claim form; and

  (iii)   an application notice for continuation of the order.

(4)     Anyone notified of this order will be given a copy of it by the Applicant's legal representatives.

(5)     The Applicant will pay the reasonable costs of anyone other than the Respondent which have been incurred as a result of this order including the costs of finding out whether that person holds any of the Respondent's assets and if the court later finds that this order has caused such person loss, and decides that such person should be compensated for that loss, the Applicant will comply with any order the court may make.

(6)     If this order ceases to have effect (for example, if the Respondent provides security or the Applicant does not provide a bank guarantee as provided for above) the Applicant will immediately take all reasonable steps to inform in writing anyone to whom he has given notice of this order, or who he has reasonable grounds for supposing may act upon this order, that it has ceased to have effect.

(7)    The Applicant will not without the permission of the court use any information obtained as a result of this order for the purpose of any civil or criminal proceedings, either in England and Wales or in any other jurisdiction, other than this claim.

(8)    The Applicant will not without the permission of the court seek to enforce this order in any country outside England and Wales save only in Denmark or seek an order of a similar nature including orders conferring a charge or other security against the Respondent or the Respondent's assets.

## NAME AND ADDRESS OF APPLICANT'S LEGAL REPRESENTATIVES

The Applicant's legal representatives are-

Davies Johnson & Co.
The Old Harbour Office
Guy's Quay, Sutton Harbour
Plymouth
Devon, PL4 0ES

Attn: Johnny Johnson & Jenny Gliddon

Telephone:  +44-(0)1752 226-020
Fax:  +44-(0)1752 225-882

Solicitors for the Claimant

8

EXHIBIT I

## Loube, Harmony I (NYC - X73383)

| | |
|---|---|
| **From:** | Morris, Francesca (NYC - X73431) |
| **Sent:** | Friday, August 08, 2008 2:12 PM |
| **To:** | 'cmansuy@mahoneykeane.com' |
| **Cc:** | Loube, Harmony I (NYC - X73383) |

**Subject:** RE: KALAFRANA SHIPPING LTD -v- SEA GULL SHIPPING CO .SARL

Dear Mr. Mansuy,

We refer to the below email. As you know we have entered a limited appearance in the action in New York under Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure (the "Admiralty Rules"). Our appearance in New York is "expressly restricted to the defense of such claim, and . . . is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served." Admiralty Rules, Rule E(8).

Please be advised that the delivery of any documents to this office for any purposes other than that provided for under Rule E(8) of the Admiralty Rules is not acceptable service of process under the Federal Rules of Civil Procedure and is without effect.

In particular, delivery of the below email is not service on Sea Gull Shipping.

I will be out of the office next week and ask that you send all correspondence regarding this case to Ms. Loube in my absence, with a copy to me.

Regards,


# Holland + Knight

**Francesca Morris**
Partner
Holland & Knight LLP

195 Broadway
New York, NY 10007

Main   212 513 3200
Direct 212 513 3431
Fax    212 513 7234
Email  francesca.morris@hklaw.com

www.hklaw.com

NOTICE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.


**From:** Christopher Mansuy [mailto:cmansuy@mahoneykeane.com]
**Sent:** Friday, August 08, 2008 1:54 PM
**To:** Morris, Francesca (NYC - X73431); Loube, Harmony I (NYC - X73383)
**Subject:** FW: KALAFRANA SHIPPING LTD -v- SEA GULL SHIPPING CO .SARL


8/27/2008